The STATE of Wyoming, Plaintiff,

v.

W. O. CHASTAIN, Defendant.

No. 4997.

Supreme Court of Wyoming.

May 2, 1979.

John J. Rooney, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., and Judith C. Lopez, Legal Intern, Michael H. Schilling, Asst. Atty. Gen., Cheyenne (argued), for plaintiff.

Gerald M. Gallivan, Director (argued), Wyoming Defender Aid Program, Laramie, for defendant..

Before RAPER, C. J., McCLINTOCK, THOMAS and ROSE, JJ., and GUTHRIE, J., Retired.*

\* ROONEY, J., having recused himself from participation in this case, GUTHRIE, J., Retired, was assigned, having been retained in active judicial service pursuant to § 5, Art. V, Wyoming Constitution and § 5–1–106(f), W.S.1977, by order of the court entered on January 1, 1979.,

1. The following is a summary of the district court's order in pertinent part:

The court first related the facts of the case in summary form:

" * * *

" * * * The State had the burden of showing that the consent was voluntary and informed. At the suppression hearing, there was no showing that the defendant knew what the test was for and therefore it could not have been an informed consent. The trial court should have held that there was no lawful consent and suppressed the 'consent form.'

"Having determined that there was no consent, the Court must next consider whether or not the involuntary test can be made only incident to a lawful arrest.

RAPER, Chief Justice.

The appellant-plaintiff, State of Wyoming (State), after leave granted, has filed a Bill of Exceptions pursuant to §§ 7–12–102 through 7–12–105, W.S.1977, seeking an answer to legal questions concerning the admissibility of a blood-alcohol test in a case involving driving while under the influence of an intoxicant (DWUI) in violation of § 31–5–233, W.S.1977. The blood-alcohol test was administered to the appellee-defendant by a hospital laboratory technician at the request of the Wyoming Highway Patrol officer who investigated the accident in which the defendant was injured. As a result of this blood test, as well as other evidence, the defendant was charged with DWUI. He was tried before a justice of the peace and was found guilty. At the trial the defendant unsuccessfully sought to suppress the blood-alcohol test. Upon the justice of the peace pronouncing him guilty, the defendant appealed to the district court. The district court reviewed the record and determined that the blood-alcohol test was inadmissible, that without this evidence the State had no case against defendant, and ordered that the case be remanded to the justice court for entry of a judgment of not guilty.[1]

"Our implied consent law * * * 31–6–101 et seq. W.S.1977, provides * * * that a blood test may be taken incidental to a lawful arrest. The language of the statute clearly provides that there must be a lawful arrest. The unambiguous language is not subject to any interpretation and speaks for itself. Here there was no arrest prior to the time the blood sample was taken and there was therefore non-compliance with the statutory language.

"The State argued that the implied consent law was not the exclusive procedure under which a blood test could be taken while, needless to say, the defendant argued otherwise.

"The Court need not determine that point because any involuntary blood test, being a search, must be taken incident to a lawful arrest. *Schmerber v. California*, 384 U.S. 757, 16 L.Ed.2d 908, 86 S.Ct. 1826, [16 L.Ed.2d 908]. *People v. Williams*, 557 P.2d 399, 405 Colo. 1976. There was no lawful arrest here; therefore, the blood test was not admissible.

* * * *"

We will decide the questions raised by the Bill of Exceptions, generally approving the position of the defendant.

The positions asserted here by the State are:

"I. The district court should have concluded that the [defendant's] consent [to the blood-alcohol test] was informed.

"II. The subject of a search does not have to be told that the results of a search can and will be used against him. *Miranda* warnings do not apply to the Fourth Amendment, nor is any other kind of warning requirement imposed.

"III. The State is not required to show that consent is informed. The State is only required to demonstrate that consent is voluntary.

"IV. An involuntary blood test does not have to be performed as an incident to a lawful arrest, if the requirements of the emergency doctrine are met." (Bracketed material added.)

In response, the defendant asserts:

"I. The district court properly concluded that the consent was not 'informed.'

"II. The [defendant] concedes that under prevailing law *Miranda* warnings are not required in conjunction with the taking of a blood test or the Implied Consent Law. However, Wyoming Implied Consent Law is a mandatory procedure that requires the giving of warnings contained in that statute.

"III. The Implied Consent statutes require under the Implied Consent Law that the consent is informed, at least as to those matters implicit in the procedure. The standard of simple voluntariness is no longer applicable.

"IV. An involuntary blood test may only be performed incident to a lawful arrest." (Bracketed material substituted.)

The evidence presented against defendant at his trial was this: The defendant was the driver and sole occupant of a pick-up involved in a single-car accident which occurred between 5:00 and 5:30 p. m. on September 28, 1976. The defendant was returning to his home in Newcastle, Wyoming, from Cheyenne, Wyoming. The pickup gradually left the highway and traveled in a straight line along the barrow pit for 500 feet until it collided with an access-road approach to the highway. Thereafter, the pickup bounced and rolled until it came to rest on its top. The defendant suffered several superficial head injuries and was covered by a substantial quantity of gasoline but was not, so far as is apparent from the record, seriously injured. He was transported from the scene of the accident to the Weston County Hospital in an ambulance. At the scene, the investigating highway patrol officer detected the odor of alcohol on defendant's breath. After the defendant was secured in the ambulance and on his way to the hospital, the officer investigated the scene which he found to be as described above. Because the officer could find no cause for the accident and because he detected the odor of alcohol on defendant's breath, he had, in his opinion, probable cause to suspect that a DWUI violation had been committed. The officer then went to the hospital and ordered a blood-alcohol test to be performed. He did not arrest [2] the defendant nor did he personally address him. This test revealed 0.15% by volume of alcohol in defendant's blood and was introduced in evidence. The laboratory technician who drew the blood testified that defendant stated at the time she drew the blood that he had been drinking but not enough to make a difference. Another witness testified that the defendant stopped at his establishment, which is located about 35 miles from Newcastle, shortly before the accident took place. While he was there, defendant consumed two beers and a cheeseburger and bought a six pack of beer to go.

---

2. We do not necessarily want to be understood to have decided that under the facts presented that no argument could have been made that defendant *was* under arrest. However, this matter was at no time raised as an issue; so we will discuss it no further than to point out that the issuance of a citation is not conclusive on the matter of arrest and that other facts, if properly developed, could support the conclusion that an arrest was made.

With specific regard to the blood test, which is in question here, the highway patrol officer asked the defendant's attending physician to order a blood-alcohol test on the defendant. This was done by the laboratory technician, who testified that she told defendant that she needed his consent to perform a blood-alcohol test for the police. The defendant could not see the form because his glasses were lost in the accident, so the laboratory technician held out two fingers, one above and one below the signature line, to indicate to the defendant where he should sign. The defendant then placed his signature on the form. Two days later a citation was issued to the defendant for DWUI. It is conceded, and the record makes clear, that no other charges were contemplated against the defendant (e. g., no mention of careless driving, no facts to support a greater charge than DWUI, such as vehicular homicide).

In order to properly set the stage for a discussion of the issues presented, it is necessary that we address a few preliminary matters. The State relies heavily on three cases. *State v. Oevering,* Minn.1978, 268 N.W.2d 68; *Cupp v. Murphy,* 1973, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900; and *Schmerber v. California,* 1966, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. These are valuable authorities; but, under the facts presented here, they are not applicable. This is so because we concededly have no arrest, because we are dealing *only* with the crime of DWUI, and because the blood-alcohol test in question was taken solely in the context of DWUI and our Implied Consent Law.[3]

■ The Implied Consent Law is designed to work hand in hand with the DWUI statute. The Implied Consent Law was not designed to give greater rights to a suspected drunken driver than were constitutionally afforded before its passage. Its purpose was intended to impose a condition on the right to operate a motor vehicle on the streets and highways of this state. The condition requires that a driver, by so operating a vehicle in Wyoming, consents to submit to chemical tests for intoxication under statutorily determined circumstances. The refusal to submit to a test can result in revocation of a driver's license. It was intended to facilitate the tests for intoxication and not to inhibit the ability of the state to remove drunken drivers from the highways of our state. In light of this purpose, it must be liberally construed to effectuate its policies. § 31–6–102, W.S. 1977; *Scales v. State,* 1974, 64 Wis.2d 485, 219 N.W.2d 286, 291–292.

■ The first step in the analysis of the Implied Consent Law requires a careful reading of § 31–6–102(a):

### Consent Provision

"(a) Any person who operates a motor vehicle upon a public street or highway is deemed to have given consent, subject to the provisions herein, to a chemical test of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if arrested and officially charged for an offense as defined by W.S. 31–129 [§ 31–5–233]."[4]

### Arrest and Probable Cause for Arrest Provision

"The test or tests *shall* be incidental to a lawful arrest and shall be given as promptly as possible *after* the arrest and be administered at the direction of a law enforcement officer having probable cause to believe the person to have been driving or in actual physical control of a motor vehicle upon a street or highway while under the influence of intoxicating liquor to a degree which renders him

---

**3.** Sections 31–6–101 to 31–6–106, W.S.1977. Section 31–6–101 contains only definitions about which we have no question here, and hence it is omitted from the opinion.

**4.** If the factual situation gave rise to a charge of vehicular homicide or the potential for such a charge, this statute would have no applicability. A blood test may be taken incident to an arrest for such a crime and may be admissible without regard to the Implied Consent Law. *Schmerber v. California,* supra.

incapable of safely driving the vehicle." (Emphasis added.)

### "Informed" Consent Provisions

"The arrested person *shall* be told that his failure to submit to the chemical test may result in the suspension of his privilege to operate a motor vehicle. The law enforcement officer *shall* further advise the arrested person that he may go to the nearest hospital or clinic and secure a test at his own expense or he shall have the test administered by a person at a place and in a manner prescribed by the law enforcement agency and at the expense of the arresting agency. If the arrested person elects to secure a test at his own expense, the results of the test shall be made available to the arresting officer and to the arrested person. Disclosure of the test results by the person administering it shall not be a violation of the doctor-patient relationship." [5] (Emphasis added.)

■ Thus, at the end of our perusal of this section, we can conclude that: (1) consent to a chemical test is given when one embarks upon the streets and highways of Wyoming, (2) the tests must be incidental to a lawful arrest for DWUI, and (3) before the test is given, some basic information must be given to a defendant.

However, there is *more* to the statute. Section 31-6-102(b) provides:

"(b) Any person who is dead, unconscious, or otherwise in a condition rendering him incapable of refusal is deemed not to have withdrawn his consent provided by subsection (a) of this section, and the test or tests may be administered subject to the provisions of W.S. 31-247.3 [§ 31-6-103]."

Under this subsection, a test may be given without there being an arrest or the need to convey any information to the individual in question. This is not only clear from the fact that there is no "arrest" or "information" language, but logic demands this conclusion. It would serve no purpose to require an arrest or the conveying of information to one who was dead, unconscious, or otherwise incapable of refusing a test. The determination that a person is "unconscious" or "incapable of refusal" is, of necessity, to be determined by the investigating officer based on the best available evidence. *State v. Mangels,* 1975, 166 Mont. 190, 531 P.2d 1313, 1314-1315. The only conclusion that can be reached here is that, where the DWUI suspect is unconscious, or otherwise incapable of refusal, the test may be given but the suspect may, at the appropriate time, withdraw his consent (i. e., when he is conscious or becomes capable of refusing).[6] See generally, "Admissibility in criminal case of blood-alcohol test where blood was taken from unconscious driver," 72 A.L.R.3d 325 (1976).

■ Thus, a driver capable of consenting, who refuses the test, is subject to the suspension provisions of the statute.[7] And an

---

5. This requires the arresting officer to convey *this* information to the driver before performing, or having performed, a chemical test. No more, no less.

6. § 31-6-105(d) provides:
"* * * The failure or *inability* to obtain an additional test by a person shall not preclude the admissibility in evidence of the test or tests taken at the direction of a law enforcement officer." (Emphasis added.)

7. § 31-6-102(c) and (d), W.S.1977:
"(c) If a person under arrest refuses upon the request of a law enforcement officer to submit to a chemical test designated by the law enforcement agency as provided in subsection (a) of this section, none shall be given, but upon the receipt of the law enforcement officer's sworn report or statement that

he had probable cause to believe the arrested person was driving or was in actual physical control of a motor vehicle upon a public street or highway while under the influence of intoxicating liquor to a degree which rendered him incapable of safely driving such vehicle, and that the person refused to submit to the test upon the request of the law enforcement officer, the department shall suspend his operator's license for a period of thirty (30) days subject to review as hereinafter provided.

"(d) No such suspension is effective until ten (10) days after receipt by the arrested person of written notice thereof submitted by certified mail to the last known address furnished the department or by personal service made in accordance with the provision of Rule 4, Wyoming Rules of Civil Procedure.

unconscious or otherwise incapacitated driver who withdraws his consent when he is so able also is subject to the suspension provisions.

With regard to the specific questions presented to us in the Bill of Exceptions, we are impelled to the following conclusions:

(1) The Implied Consent Law is the exclusive means and is required procedure to obtain a chemical test to determine blood-alcohol level where a suspect is arrested and the law enforcement officer has probable cause to suspect DWUI. We emphasize that it is exclusive only with regard to DWUI (§ 31–5–233, W.S. 1977).[8]

(2) If the State wished to obtain a blood-alcohol test, it was required to have proceeded either under § 31–6–102(a) or (b). The State made no claim that it was proceeding under § 31–6–102(b) and, therefore, the admissibility of a blood-alcohol test must be considered in light of § 31–6–102(a).

(3) The State conceded that the defendant was *not* under arrest and, therefore, the blood-alcohol test would not be admissible for that reason alone.

(4) In order to obtain a proper consent under § 31–6–102(a), certain information must be conveyed to a suspect. It is not necessary that this be done by the law enforcement officer directly (e. g., it could be funneled through a third person who is acting as an agent of the law enforcement officer where the suspect does not speak or understand English or where the suspect is conscious and has the capacity to consent but where, for medical reasons, the law enforcement officer would not be permitted to address the suspect in person). However, it is required that it be done and that the suspect consent to the test in the light of that information. In this case, reading the record in a light most favorable to the State, the only information conveyed to the defendant was that the test was a blood alcohol and that it was for the police. This does not even come close to fulfilling the statutory requirements and, hence, would be a circumstance which would require the suppression of the blood-alcohol test, absent, of course, the defendant's acquiescence in its admission.

(5) All parties agree, and it is clear from all pertinent authorities, that *Miranda*-type warnings are not required in the context of DWUI and the Implied Consent Statutes.

The upshot of the above conclusions is that the district court properly determined that the blood-alcohol test, which was given to the defendant, was not admissible in his trial for DWUI.[9]

The questions presented by the Bill of Exceptions are decided.

Failure to demand a hearing within the ten (10) day period is a waiver of the right of hearing, and the department shall continue the suspension without further hearing. If demand for hearing is made, the department shall establish a time and place for the hearing in the county where the arrested person resides unless the department and the arrested person agree that the hearing be held in some other county. The county attorney shall give at least ten (10) days notice of the hearing to the arrested person. Any hearing shall be conducted by a county judge or justice of the peace of the county. It is the duty of the county and prosecuting attorney for the county wherein the hearing is conducted to represent the department in all proceedings and hearings in the matter."
Sections 31–6–103 through 31–6–105, W.S. 1977, which follow, cover procedures to be pursued when a driver refuses a test and desires a hearing after compulsory suspension, appeal from hearing, the method of drawing blood, persons qualified to draw and chemically analyze blood and freedom of liability from those administering tests.

8. We point out for the purpose of clarity that the test is not required, *Hammer v. Town of Jackson*, Wyo.1974, 524 P.2d 884, and that other evidence can be and frequently is sufficient to establish the crime of DWUI.

9. We deny the Bill of Exceptions on the grounds stated in the opinion, because we agree with the district court that the blood-alcohol test is inadmissible. However, we wish to make clear that we neither expressly agree nor disagree with any other aspect or determination of the order made by the district court (see footnote 1, supra).