**Stephen D. VAN ORDER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 5128.

Supreme Court of Wyoming.

Oct. 4, 1979.

Richard H. Honaker, Wyoming Public Defender Program, signed the brief on behalf of appellant.

John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., and Douglas J. Moench, Jr., legal intern, signed the brief on behalf of appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

RAPER, Chief Justice.

The sole issue raised in this appeal is the admissibility at appellant-defendant's trial for negligent homicide in violation of § 31–5–1115, W.S.1977 [1] of a blood alcohol test which was performed on defendant at the request of a highway patrol officer at the scene of a fatal automobile accident. Defendant phrases the issue to be:

"THE COMPULSORY ADMINISTRATION OF A BLOOD ALCOHOL TEST WITHOUT A SEARCH WARRANT OR CONSENT, AND NOT INCIDENT TO A LAWFUL ARREST, VIOLATED APPELLANT'S RIGHTS UNDER THE FOURTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES AND ARTICLE ONE, SECTION FOUR OF THE WYOMING CONSTITUTION, AND THE RESULTS OF THAT TEST SHOULD HAVE BEEN SUPPRESSED.

"A. The Law of Search and Seizure Applies.

"B. Appellant Did Not Consent to the Search.

"C. The Search Was Made Without a Warrant.

"D. Such a Warrantless Search Can Be Justified As a Search Incident to a Lawful Arrest.

"E. Appellant Was Not Lawfully Arrested Prior to Administration of a Com-

---

1. "§ 31–5–1115. *Negligent homicide.*

"(a) When the death of any person ensues within one (1) year as a proximate result of injury received by the driving of any vehicle in reckless disregard of the safety of others, the person so operating such vehicle shall be guilty of negligent homicide.

\* \* \*"

In effect on date of crime; repealed by § 3, ch. 139, S.L.Wyo.1979.

pulsory Blood Alcohol Test, and the Trial Court Should Have Suppressed the Results of That Test."

The district court allowed the blood alcohol test results to be admitted in evidence and defendant was found guilty by a jury and sentenced to jail for the charged crime.

We will affirm.

The defendant and his intended bride, Kimberly Sue Cramer, attended the Woodchopper's Jamboree in Encampment, Wyoming, on June 18, 1978. Defendant drank six or seven beers at the rodeo, and had three or four drinks at an Encampment bar after the rodeo. The defendant appeared to be intoxicated when observed by an Encampment law enforcement official at 3:30 p. m. in the afternoon before the fatal occurrence, the subject of this prosecution. Defendant testified in his own behalf and claimed that he remembered nothing about the events which transpired from the time he left an Encampment bar and his awaking in a Casper hospital.

■ The testimony presented by the State at trial included many eye-witness accounts of the crash. A group of persons was traveling together northbound on Wyoming Highway 230 about half way between Encampment and Saratoga. The individual driving the first of these vehicles testified that defendant's vehicle passed him three to five minutes before the accident and was traveling at a speed estimated between 90–100 miles per hour. The occupants of the next vehicle, which was passed by defendant's vehicle, also testified that the defendant's vehicle was traveling 90–100 miles per hour. The occupants of the third vehicle, the Readis, who were also traveling with this group, were warned by way of C. B. radio that defendant's vehicle was approaching them from behind traveling at a high rate of speed and might try to pass them on their right. Mr. Readi swerved to

the right when it was apparent defendant's vehicle was going to pass on the left. Defendant's vehicle also swerved to the right and the right front fender of defendant's pickup struck the left rear corner of Readis' horse trailer. Defendant's vehicle then went through a highway right-of-way fence and came to rest in a field. Both defendant and Miss Cramer were thrown from the pickup. The accident occurred between 7:30 and 8:00 p. m. Highway Patrol Officer Donald Sherrod was dispatched to investigate the accident at 7:39 p. m. and arrived at the scene at 7:47 p. m. When he arrived at the scene, the highway was clear and dry, there was no wind and it was still light although it was near dusk. The highway surface in that area was new and the roadway was straight although at a slight downgrade. Officer Sherrod found the defendant alive, although appearing to be seriously injured, and in a semi-conscious state. He also detected a strong odor of alcohol about the person and on the breath of defendant. Officer Sherrod also checked Miss Cramer and found her body lifeless. Officer Sherrod informed the defendant that he was under arrest as the ambulance crew was taking him away on a stretcher and he directed the ambulance attendants to have a blood alcohol test performed. Officer Sherrod also radioed ahead to Rawlins in order to have a police officer standing by to witness the taking of a blood test and to have a "hold" placed on defendant.[2] These directions were apparently not carried out, although a blood test request form was filled out by Officer Sherrod and a blood test was performed which revealed defendant's blood alcohol content to be .20%. At trial defendant moved to have the blood alcohol test suppressed. The district court, at first, indicated he would suppress it, but then conducted a more extensive hearing at which it was determined the blood test would be admissible. The court stated his ruling:

---

**2.** Because of his condition, defendant was transferred to a Casper, Wyoming hospital shortly after his arrival in Rawlins. His condition was not as serious as it was thought it might be and defendant was released from that hospital the following day. No restraints were

put on his liberty at that time despite Officer Sherrod's request that defendant be held. A warrant was issued June 27, 1978 for defendant's arrest and he was arrested on July 11, 1978.

"THE COURT: Gentlemen, it seems that the area of disagreement is when an arrest is effected.

"Now, based upon what I heard yesterday, and without more than what I heard yesterday, it was then clear to me that this was an apparent boot strap effort to validate the charges with the blood tests. Now, it seems to me from what Officer Sherrod has stated in his testimony that he made the only determination that could have been made with such investigatory tools that he had to make his investigation with in his determination of probable cause that an arrest was appropriate. It seems that he undertook to effect that arrest in the awkward circumstances available to him by advising the defendant that he was under arrest, which it seems, if I understand the statute, then immediately triggers a validity of the blood sample testing.

"Now, call it what you want beyond that point, if Mr. Van Order was in the hospital and if hospital attendants, in fact, transferred him to the Natrona County Hospital, they did so upon their own, but insofar as I can tell, that left the status of Mr. Van Order at nothing more nor nothing less than a fugitive, but at least for the purpose of whether the blood test was initiated in the sequence required by the statute, it seems, one, that there was determination of probable cause; two, that as a result of valid probable cause an arrest in the only fashion available was effected; three, that as a result of the arrest a blood sample test was secured. I ruled yesterday. I reverse my ruling today."

Although not very far off mark, we do not fully agree with the reasoning of the court. However, even if the trial court's basis of decision is incorrect, it should not be reversed if it is sustainable on another theory. *Weber v. Johnston Fuel Liners, Inc.,* Wyo. 1975, 540 P.2d 535; *State v. Sneed,* Mo.App.

3. §§ 31–6–101 et seq., W.S.1977.

4. § 31–5–233, W.S.1977.

5. In *Cupp v. Murphy* the United States Supreme Court approved a search made pursuant

1975, 529 S.W.2d 38; *Miles v. State,* Tex.Cr. App.1972, 488 S.W.2d 790; West's Digest System, Criminal Law, ☞1134(6).

■ In *State v. Chastain,* Wyo.1979, 594 P.2d 458, this court dealt with a related problem. There it was made plain that the Implied Consent Law [3] was the exclusive procedure to be followed where a defendant was arrested for driving while under the influence,[4] but was exclusive only insofar as that offense was concerned. In footnote 4 of that opinion it was said:

"If the factual situation gave rise to a charge of vehicular homicide *or the potential* for such a charge, this statute would have no applicability. A blood test may be taken incident to an arrest for such a crime and may be admissible without regard to the Implied Consent Law. *Schmerber v. California,* supra." (Emphasis added.) Id. at 594 P.2d 461.

Defendant suggests in his brief that such a situation is incongruous because it provides greater procedural protection to a drunk driver than it does to one charged with negligent homicide or involuntary manslaughter. We would not agree that the Implied Consent Law affords a drunk driver any procedural protection—rather it is a statute designed to facilitate the removal of drunk drivers from our highways. *State v. Chastain,* supra, 594 P.2d at 461. And see, *People v. Keen,* 1976, 396 Mich. 573, 242 N.W.2d 405. We do not perceive any procedural incongruity in this state of affairs.

■ Well reasoned authority exists which convinces us that the blood alcohol test was admissible in this defendant's trial for negligent homicide. It is not important that we decide whether or not defendant was arrested in a formal sense. As noted by other courts, the United States Supreme Court decision in *Cupp v. Murphy,* 1973, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900,[5] points the way:

to a brief station-house detention where no formal arrest had been made. Murphy, who was a suspect in the murder of his wife, had voluntarily appeared at the police station. The police noticed a dark spot under one of Mur-

"Under the theory of *Cupp v. Murphy, supra,* then, a warrantless body search may be conducted in spite of the fact that the person searched is not formally under arrest when (1) the character of the search is highly unintrusive, (2) the evidence sought will be forever lost absent the search, and (3) sufficient probable cause exists to support a formal arrest." *State v. Oevering,* Minn.1978, 268 N.W.2d 68, 73; and see to the same effect *State v. Heintz,* Or.1979, 594 P.2d 385, 390–391.[6]

Under circumstances virtually identical to that presented to us here, the courts in both *State v. Oevering,* supra, and *State v. Heintz,* supra, held a blood test performed at or near the scene of an accident where criminal negligence or negligent homicide was a factor was admissible in a trial for such a crime.

" * * * We are keenly aware that the standards enunciated in *Cupp v. Murphy,* supra, must be stringently enforced by the courts of this state in order to avoid serious Fourth Amendment abuses in the form of warrantless pre-arrest investigatory searches. Nevertheless, the *Cupp v. Murphy* doctrine can serve an important function in criminal negligence prosecutions. Alcohol-related accidents often produce unconscious or uncommunicative victims. We think it would be absurd to demand the performance of an arrest ritual in the presence of such persons as a prerequisite to the admission of probative blood-alcohol evidence against them. Rather, it seems eminently more sensible to allow the admission of such evidence where probable cause would plainly have supported the arrest of such persons had they been fully conscious. We therefore adopt the rule of *Cupp v. Murphy,* supra, for criminal negligence prosecutions in

Minnesota." *State v. Oevering,* supra, 268 N.W.2d at 73; See, *State v. Heintz,* supra, 594 P.2d at 390–391.

We embrace the reasoning of the above-cited decisions and hold that the requirements of *Cupp v. Murphy,* supra, have been fulfilled in the case at bar. Blood testing is of a routine and unobtrusive character. *State v. Oevering,* supra; *State v. Heintz,* supra; *Schmerber v. California,* 1966, 384 U.S. 757, 771, 86 S.Ct. 1826, 1836, 16 L.Ed.2d 908, 920. The presence of alcohol in the blood is evanescent and disappears readily with the passage of time. Had Officer Sherrod not obtained a blood test when he did, the evidence might well have been forever lost. *State v. Oevering,* supra; *State v. Heintz,* supra. Finally, we conclude that Officer Sherrod had probable cause to arrest defendant for negligent homicide. Sherrod knew that a traffic accident had occurred which resulted in the loss of life. Eye witnesses were on the scene which indicated defendant was driving[7] in an extremely erratic and hazardous manner. The roadway was clear and provided no explanation for the severe accident. The defendant reeked of alcohol.

In conclusion, the exigencies which justify the limited *Cupp v. Murphy* warrantless search were fully established on the record. The district court's ruling which admitted the blood alcohol test was correct.

Affirmed.

---

phy's fingernails and they took scrapings which eventually were a key piece of evidence in his murder conviction.

**6.** Also see, *Carrington v. Superior Court, County of Riverside,* 1973, 31 Cal.App.3d 635, 107 Cal.Rptr. 546; *People v. Fidler,* 1971, 175 Colo.

90, 485 P.2d 725; and generally, West's Digest System, Criminal Law, ▮▮▮

**7.** Although these witnesses later (at trial) were unsure if defendant was driving, they had communicated this information at the scene of the accident and the jury so found.