**Michael R. OLSON, Appellant (Appellant/Defendant),**

v.

**The STATE of Wyoming, Appellee (Appellee/Plaintiff).**

**No. 84–70.**

Supreme Court of Wyoming.

April 11, 1985.

Sharon M. Rose of Vehar, Lehman, Beppler & Jacobson, P.C., Kemmerer, for appellant (appellant/defendant).

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Michael A. Blonigen, Asst. Atty. Gen., (argued), for appellee (appellee/plaintiff).

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

CARDINE, Justice.

This appeal is from a conviction of driving while under the influence of an intoxicating liquor in violation of § 31–5–233, W.S.1977.

We affirm.

Appellant raises the following issues:

"I. Whether or not the trial court erred in denying appellant's motion to dismiss for lack of probable cause.

"II. Whether or not the trial court erred in admitting evidence as to the results of the Intoximeter test inasmuch as appellant's consent to the test was not knowingly and voluntarily made.

"III. Whether or not the court erred in denying appellant's motion in limine and allowing testimony concerning reports from 'unknown' truck drivers.

"IV. Whether or not the court erred in instructing the jury that it was not neces-

sary for the prosecution to prove unsafe driving."

## FACTS

A Wyoming highway patrolman was issuing a citation to a speeder on Interstate 80. A tractor trailer pulled up behind, stopped and the driver informed the officer that a car behind him was being driven erratically. Another truck driver pulled up and provided more information about that automobile. The patrolman turned on his CB and heard more discussion about the vehicle. The automobile in question went by; both truck drivers identified it as the vehicle they were describing earlier. The patrolman checked the speed of the car at 59 miles per hour. He followed the vehicle for approximately one mile down the highway and onto an exit ramp. The car was observed to weave slightly and to hug the inside of the ramp. The patrolman stopped the automobile. It was being driven by Michael Olson. The officer noticed the smell of alcohol and that Olson's eyes appeared to be bloodshot and watery. He asked Mr. Olson to perform two field sobriety tests; Olson did not perform these tests adequately.

At that time the officer placed Olson in the patrol car, read him his "Miranda" rights, and gave some additional field sobriety tests. He then was arrested, charged with driving while under the influence (DWUI), and advised: "Your failure to submit to any test may result in the suspension of your license." Mr. Olson asked what would happen if he refused to submit to the test. The officer stated: "I advise your license to operate will be suspended." When Olson asked for how long, the officer replied that he did not know, that it was up to the motor vehicle department and asked again if Olson would submit to a test. Olson agreed to take the test. The results of the breath test showed a blood alcohol level of .12 percent. Appellant Olson decided to get an independent blood test; however, he subsequently changed his mind.

Appellant filed a motion to dismiss for lack of probable cause to arrest, a motion in limine relating to the information given by the unidentified truck drivers, and a motion to suppress the Intoximeter test because the appellant did not knowingly and voluntarily consent to the test. The motion to dismiss and the motion to suppress were denied. The motion in limine was taken under advisement.

After a trial by jury, appellant was convicted. The conviction was affirmed by district court and appealed to the supreme court.

## PROBABLE CAUSE TO ARREST

Appellant contends that the initial stop was illegal and, therefore, any evidence obtained as a result of that stop should not have been considered in determining probable cause for arrest. The arresting officer directly observed only that the vehicle was exceeding the speed limit, weaving slightly and hugging the exit ramp. Appellant contends that the officer did not stop him because of the speeding violation because he was not ticketed for that offense; and since the informant's information was not sufficient to provide a basis for even an investigatory stop, it was an illegal stop and the charge should be dismissed.

■ The standards applicable to a confrontation between a citizen and a policeman investigating suspicious circumstances are stated to be:

"[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. * * * And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968).

A policeman is not required to simply shrug his shoulders and allow a crime to

occur merely because he lacks the necessary information required for probable cause to arrest. *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). He may make an investigatory stop.

"An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity.

"Courts have used a variety of terms to capture the elusive concept of what cause is sufficient to authorize police to stop a person. Terms like 'articulable reasons' and 'founded suspicion' are not self-defining; they fall short of providing clear guidance dispositive of the myriad factual situations that arise. But the essence of all that has been written is that the totality of the circumstances— the whole picture—must be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." (Footnote and citations omitted.) *United States v. Cortez,* 449 U.S. 411, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981).

We have consistently applied these standards in Wyoming cases. A law enforcement officer may properly make an investigatory stop without probable cause to arrest. *Lopez v. State,* Wyo., 643 P.2d 682 (1982); *Parkhurst v. State,* Wyo., 628 P.2d 1369 (1981).

Using the totality-of-the-circumstances test, did the officer have sufficient reason to stop appellant? The patrolman testified that he was issuing a speeding citation when a truck driver pulled up behind and stated that a

" * * * Buick, silver or gray, coming eastbound * * * was all over the road, that they were trying to flag down a couple of girls in another car, * * * that this vehicle passed him on the left hand side [going into the] median * * * driving real crazy * * *.

\* \* \* \* \* \*

"He [said the] three occupants in the vehicle * * * were drinking.

\* \* \* \* \* \*

"[Then] another truck pulled up * * *[. The driver] * * * said [the car stopped] a few miles back, * * * [and] they * * *, all three of them got out of the car, put their beer bottles on top of the roof and were relieving [themselves].

\* \* \* \* \* \*

"[Then] the vehicle in question went by, [and the truck drivers] identified it * * * as the [same] vehicle they were describing * * * earlier. [It was] clocked * * * on radar * * * at 59 miles an hour [as it passed by. The speed limit in the area is 55 miles per hour.]

\* \* \* \* \* \*

"[The officer] fell in behind and followed it to the exit ramp where * * *

\* \* \* \* \* \*

" * * * [he] observed it to weave slightly * * * when it took the ramp * * * [and hug] the inside of the ramp [as it exited] * * *."

Appellant contends that the informers' reports did not meet the "indicia of reliability" needed to justify the forcible stop of Olson. *Adams v. Williams,* supra. He cites *Campbell v. Washington, Dept. of Licensing,* 31 Wash.App. 833, 644 P.2d 1219 (1982), for the proposition that a police officer is not authorized to stop a vehicle in the absence of corroborative information. In that case, a passing motorist pointed to a vehicle and announced that it was being driven by a drunk driver. The police officer followed the vehicle but did not personally observe conduct which was indicative of driving while under the influence. The only statement upon which he could rely was conclusory. The court held that citizen informants, as opposed to professional police informants, are deemed presumptively reliable sources of information, but that the citizen report must also contain enough objective facts to justify pursuit and detention. *State v. Wakeley,* 29 Wash.App. 238, 628 P.2d 835 (1981). *Campbell v. Washington, Dept. of Licensing,* supra, con-

tained no objective facts. Other courts have held that a report of objective facts may itself be sufficient and that personal observations of a police officer are not required for an investigatory stop. *Marben v. State, Dept. of Public Safety*, Minn., 294 N.W.2d 697 (1980); *State v. Abadie*, La., 390 So.2d 517 (1980).

█ It is unnecessary for us to here decide whether the citizen reports were sufficient in themselves to justify an investigatory stop without independent corroboration. The officer did view a violation of the speeding law and erratic driving in the weaving and hugging of the exit ramp. The officer had a reasonable and articulate suspicion based upon a totality of the circumstances to investigate the Olson car further. The reports from the informers stated factual observations about the driving of the gray Buick, the activities of the occupants, and were generally non-conclusory.

3 LaFave, Search and Seizure § 9.3 (1978), p. 66, footnote 49 states:

"Consider W. Schaefer, The Suspect and Society 41–42 (1967):

" 'When writing opinions I have often been tempted to state the test of the reasonableness of police officer's conduct in terms of what the reaction would be if he had not done what he is charged with having done wrongfully. "If you would fire the officer for not doing what he did, then what he did was reasonable." * * I agree that it isn't a very stylish way of expressing the concept of reasonableness, and that somewhat circular reasoning is involved. But to me there is value in restating the question so that the whole problem may be seen.' "

If the driving pattern of this car had continued, resulting in a highway fatality, society would be understandably shocked if the patrolman, under these circumstances, had not investigated these reports.

█ Appellant also contends that there was not probable cause to make the arrest. He bases this argument on the theory that the field sobriety tests were necessary to establish probable cause. He urges this court to hold that a finding of probable cause is required before field performance tests may be administered. Appellant did not make a motion to suppress the field sobriety tests for lack of probable cause, nor did he raise this issue on appeal to district court. In his brief presented to the district court, appellant stated: "The officer then had the Appellant perform certain field sobriety tests which are not at issue herein."

A defendant who wishes to preclude the use of evidence at trial which is obtained through a violation of his constitutional rights must act timely. *Blakely v. State*, Wyo., 542 P.2d 857 (1975). The question was not presented to the trial judge nor to the district court. It does not rise to the level of plain error since a "clear and unequivocal rule of law" was not violated. *Connolly v. State*, Wyo., 610 P.2d 1008 (1980). It, therefore, will not be considered on appeal.

## KNOWING AND VOLUNTARY CONSENT

Appellant contends that the results of the Intoximeter test should have been suppressed because there was not a knowing and voluntary consent to the test. This is the third case to come before this court upon the question of what advice or information must be furnished to an arrested person asked to submit to a test to determine the alcohol content of his blood.

In the first case, *State v. Chastain*, Wyo., 594 P.2d 458 (1979), the driver was neither placed under arrest nor given any advice concerning his right to take or refuse the test under § 31–6–102(a), W.S. 1977 [1] before the test was administered. Referring to § 31–6–102(a), we said that

1. Section 31–6–102(a), W.S.1977, provides in pertinent part:

"Any person who operates a motor vehicle upon a public street or highway is deemed to have given consent, subject to the provisions herein, to a chemical test of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if arrested and

"(1) consent to a chemical test is given when one embarks upon the streets and highways of Wyoming, (2) the tests must be incidental to a lawful arrest for DWUI, and (3) before the test is given, some basic information must be given to a defendant." 594 P.2d at 462.

The basic information required to be conveyed to the arrested person was that his failure to submit to the chemical test *may* result in the suspension of his driving privileges.

In the second case to come before this court concerning the same question, *State v. Marquez*, Wyo., 638 P.2d 1292 (1982), the driver was arrested and advised of his rights in accordance with the rule we announced in *State v. Chastain*, supra. The driver refused to submit to the blood alcohol test. Thereafter, pursuant to the provisions of § 31-6-102(c), W.S.1977 [2] his license was suspended. Section 31-6-102(c) makes suspension of the driver's license of one refusing the test, mandatory upon the officer filing a sworn statement showing probable cause and that the driver refused the test. The arrested driver contended that the officer should have advised him that his license *would* be suspended if he refused the test, since this is what the statute contemplates and what actually occurs. We held in *State v. Marquez* that the arrested driver need only be advised that his license "may" be suspended upon

refusal to submit to the test. We noted prophetically that "had [the officer] * * * told the driver that his driving privileges would be suspended * * * he may be in court claiming threats, intimidation, and duress." At 1296.

Here the officer, upon advising the driver that he was under arrest for DWUI, informed him in part as follows:

"Mr. Olson, * * * I am requesting that you submit to a chemical test of your breath, blood or urine. Your failure to submit to any test *may* result in the suspension of your license. Will you submit? You may go to the nearest hospital or clinic to secure a test at your expense or you may have the test administered by my agency at a place and by a person that we designate. Will you submit to a chemical test of your breath at our expense?" (Emphasis supplied.)

Appellant concedes that the officer properly read the above statement from the implied consent law to him. After the officer had given this information, the following transpired:

"OLSON: What happens if I don't?

"OFFICER: I advise your license to operate *will be* suspended.

"OLSON: For how long?

"OFFICER: I really don't know. It's up to the motor vehicle department. Will you submit to a test?

officially charged for an offense as defined by W.S.31-129 [§ 31-5-233]. The test or tests shall be incidental to a lawful arrest and shall be given as promptly as possible after the arrest and be administered at the direction of a law enforcement officer having probable cause to believe the person to have been driving or in actual physical control of a motor vehicle upon a street or highway while under the influence of intoxicating liquor to a degree which renders him incapable of safely driving the vehicle. The arrested person shall be told that his failure to submit to the chemical test may result in the suspension of his privilege to operate a motor vehicle. The law enforcement officer shall further advise the arrested person that he may go to the nearest hospital or clinic and secure a test at his own expense or he shall have the test administered by a person at a place and in a manner prescribed by the law enforcement agency and at the expense of the arresting agency."

2. Section 31-6-102(c), W.S.1977, provides:

"(c) If a person under arrest refuses upon the request of a law enforcement officer to submit to a chemical test designated by the law enforcement agency as provided in subsection (a) of this section, none shall be given, but upon the receipt of the law enforcement officer's sworn report or statement that he had probable cause to believe the arrested person was driving or was in actual physical control of a motor vehicle upon a public street or highway while under the influence of intoxicating liquor to a degree which rendered him incapable of safely driving such vehicle, and that the person refused to submit to the test upon the request of the law enforcement officer, *the department shall suspend his operator's license* for a period of thirty (30) days subject to review as hereinafter provided." (Emphasis supplied.)

"OLSON: Yeah, I'll submit to a test." (Emphasis supplied.)

■ Appellant contends that the statement, "I advise your license to operate *will be* suspended" was misleading, caused his submission to the test, negating a knowing and voluntary consent, and was contrary to our pronouncement in *State v. Chastain, supra,* and *State v. Marquez, supra.* In these kinds of cases we must recognize that fixed, rigid rules prohibiting officers from responding to questions are simply unworkable. Citizens are going to ask questions of officers concerning their rights in the operation of motor vehicles. An officer refusing to answer would be accused of being rude, uncooperative, insensitive and unfair in dealing with the driving public. To the extent, therefore, that *State v. Chastain, supra,* and *State v. Marquez, supra,* hold that a driver arrested and charged with DWUI may be told *only* that his license to drive "may be suspended," they are reversed. We hold now that if the arrested person is reasonably informed of his rights, duties and obligations under our implied consent law and he is neither tricked nor misled into thinking he has no right to refuse the test to determine the alcohol content in his blood, urine or breath, the test will generally be held admissible. In support of this holding, we note the following from *State v. Marquez, supra:*

> "A fair reading of the entire implied consent law indicates that a person arrested for DWUI should be warned that his driving privileges will be in jeopardy unless he submits to a chemical test. We do not think precise words are determinative unless an arrested person can show that the language used by the arresting officer was misleading or was not entirely clear." 638 P.2d at 1294.

■ The officer here informed appellant of the statutory requirements concerning the implied consent provisions. He stated that he was arrested and requested he submit to a chemical test; that the failure to submit may result in the suspension of his license; that he could go to the nearest hospital or clinic and secure a test at his own expense or might have the test administered by the officer. He stated also that if he refused the test his license would be suspended and that the suspension time was up to the motor vehicle department. Section 31–6–102(c), W.S.1977, supra, provides that upon receipt of the "officer's sworn report * * * the department shall suspend his operator's license." The officer was informing appellant that he would file the report. Appellant was not tricked or misled into taking the test. He was reasonably informed of his rights and duties under the implied consent law. There was no error in the admission of the test into evidence.

## TESTIMONY CONCERNING REPORTS FROM THE TRUCK DRIVERS

■ Appellant contends that the testimony by the officer at trial concerning reports from the truck drivers was hearsay, prejudicial and should not have been allowed. As the officer began testifying to these reports, appellant's counsel stated:

> "Excuse me at this time Your Honor, would you please instruct the jury that this testimony as to anything the truck driver said is only for the purpose of showing what the officer's state of mind was and that it has nothing, it is not proper for the proof of what the truckers had to say?
>
> "THE COURT: The jury is so instructed."

The officer testified that he had stopped on Interstate 80 to issue a citation; that a "trucker stopped to give * * * a report of the erratic driving" by a vehicle on the interstate, and then "a second tractor trailer stopped behind him * * * to advise * * [that the] same vehicle [was] operating erratically * * * a few miles behind * * *." As the vehicle went by, the truckers positively identified it as the vehicle they had reported being driven erratically.

The admission of evidence at trial is within the sound discretion of the trial court and absent a clear abuse will not be dis-

turbed on appeal. *Taylor v. State,* Wyo., 642 P.2d 1294 (1982).

> "In criminal prosecutions, often the action of law enforcement agents would appear incomprehensible without evidence of information which had been given to them, and proof of what they have been told may be received for this purpose as against a hearsay objection." 4 Louisell & Mueller, Federal Evidence § 417, p. 112.

A police officer is permitted to say he had the necessary information concerning possible criminal activity providing the statements are simply background information indicating that a police officer did not act without reason. *United States v. Vitale,* 596 F.2d 688 (5th Cir.1979).

The testimony is not considered hearsay because it is not offered to show the truth of the assertions but to show the officer's good faith and reasonable belief in the propriety of the action taken. *Tritsis v. Backer,* 501 F.2d 1021 (7th Cir.1974). Testimony which explains why the police officer is at the scene of the crime is not hearsay. *United States v. Gomez,* 529 F.2d 412 (5th Cir.1976).

> "This court has held in situations similar to the present that the witness is limited to a statement that he took a particular action as a result of the information received and that it is not proper to allow the witness to testify concerning the conclusions of the informer that the defendant was guilty of a crime. * * * [The criminal investigator] did not testify, nor was he asked to do so, as to the conclusions of any informer as to the present defendant's involvement in the crime." *State v. Turner,* La., 392 So.2d 436, 440–441 (1980).

Here appellant asked only that the jury be instructed that the testimony was being received for the limited purpose of showing the officer's state of mind at the time. The jury was so instructed. The testimony was properly admitted to show the reason the officer's attention was directed towards appellant's car. There was no error in the admission of this testimony.

## INSTRUCTIONS

■ Appellant contends that Instruction 9, which stated:

> "You are instructed that it is not necessary for the prosecution in this case to show that the defendant did drive a motor vehicle in an unsafe manner, but that beyond a reasonable doubt the defendant did drive a motor vehicle at a time he was under the influence of an intoxicating liquor to a degree which rendered him incapable of safely driving said motor vehicle,"

allowed the jury to convict appellant of a drinking offense as opposed to a driving offense.

In addition to Instruction 9, the jury was given Instruction 8 as follows:

> "The manner in which a vehicle is being operated does not itself establish that the driver of the vehicle is or is not under the influence of intoxicating liquor.
>
> "However, the manner in which the vehicle is being operated is a factor to be considered in light of all the proved surrounding circumstances in deciding whether the person operating the vehicle was or was not under the influence of intoxicating liquor to a degree he was incapable of safely driving such vehicle."

Appellant conceded that this was a proper instruction, but contends that the combination of the two could lead to confusion of the jury.

Instruction 9 adequately states the law as does Instruction 8. Instruction 9 informs the jury that it is not necessary to show that defendant did drive a motor vehicle in an unsafe manner. That was a correct statement of the law, for defendant may appear to be driving safely when he is so affected by intoxicating liquor that in an emergency he would be unable to adequately apply his brake, swerve or control his car. In this condition, he is incapable of safely operating a motor vehicle and is a danger to the public safety. It is not required that he first drive in an unsafe manner and perhaps become involved in an accident before arrest for DWUI is possi-

ble. As stated by appellee: "There is no requirement under * * * law that a lifeless and mangled body be pulled from the twisted wreckage of an automobile before an individual is arrested for drunk driving." Proof of unsafe driving is not required although such is competent evidence to be considered with all of the other evidence in determining whether the driver is under the influence of intoxicating liquor to a degree that he is incapable of safely driving.

There being no error in instructing the jury nor error otherwise, the judgment of conviction of driving while under the influence of intoxicating liquor is affirmed.