**Matthew GLASRUD, Appellant (Defendant),**

v.

**CITY OF LARAMIE, Appellee (Plaintiff).**

No. 96–135.

Supreme Court of Wyoming.

Feb. 21, 1997.

R. Michael Vang, of Kirkwood, Nelson & Huber, Laramie, for appellant.

Douglas K. Bryant of Corthell and King, P.C., Laramie, for appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

GOLDEN, Justice.

Matthew Glasrud's (Glasrud) prosecution and conviction in municipal court for driving under the influence followed the administrative suspension of Glasrud's driver's license, eliciting double jeopardy concerns. In response to Glasrud's appeal from his prosecu-

tion and conviction, the district court presents certified questions pursuant to Wyoming Rule of Appellate Procedure 11. We hold Wyoming's implied consent laws, providing for suspension of a driver's license for driving while under the influence, do not constitute "punishment" for purposes of double jeopardy.

## ISSUE

Faced with an appeal from a case involving the suspension of a driver's license pursuant to Wyoming's implied consent laws and a criminal trial for driving while under the influence of alcohol, the District Court, Second Judicial District, Albany County, submitted the following certified questions, which we subsequently agreed to answer:

Does Wyoming's statutory scheme for an administrative suspension or revocation of a driver's license for driving while under the influence, (specifically, Wyo. Stat. §§ 31–7–125, 31–7–127, and 31–7–128 [1994]),[1] constitute punishment for purposes of the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution and Article 1, § 11 of the Wyoming Constitution?

If so, may Wyoming reasonably convict and sentence a person for DWUI and also subject [that person] to an administrative license suspension involving the same conduct without violating the double jeopardy clause of the Fifth Amendment of the United States Constitution and Article 1, § 11 of the Wyoming Constitution?

## FACTS

The district court presented the following statement of facts to this Court in its Order Certifying Question[s] to Supreme Court:

There are no disputed facts which impede an answer to a question of law presented. There is no question that there were two separate proceedings; that both proceedings were instituted under authority granted by the State of Wyoming; and, that both proceedings were based upon the same proscribed behavior. The undisputed facts relevant to this question are as follows:

Appellant, Matthew Glasrud was arrested for DWUI [driving while under the influence] on April 1, 1995. He agreed to chemical testing and was found to have a .16% BAC [blood alcohol content]. He appeared in municipal court on April 7, 1995 and pled not guilty.

Appellant requested a contested case hearing on his driver's license suspension under the implied consent statute. The hearing examiner upheld the suspension.

At the subsequent trial in municipal court, Appellant moved to dismiss, claiming that the criminal proceeding violated the Double Jeopardy Clause of the U.S. and Wyoming Constitutions. The municipal court denied the motion. On July 13, 1995, [the municipal court] found Appellant guilty of driving under the influence.

The municipal court subsequently sentenced Glasrud to thirty days in the Albany County Jail, then suspended the thirty days with conditions, including no alcohol or alcohol related offenses for twenty-four months and ordered him to pay a fine and court costs totaling $460. Glasrud's appeal to the district court resulted in the certified questions above.

## STANDARD OF REVIEW

 Glasrud challenges the constitutionality of the municipal and state statutory schemes which provide for criminal prosecution of drunk drivers and administrative li-

---

1. We note for the record that, although the district court couched the certified questions in light of Wyo. Stat. §§ 31–7–125, –127, and –128, those statutes provide the administrative agency with authority to revoke or suspend a driver's license as part of the criminal penalty for conviction under Wyo. Stat. § 31–5–233. The real question at issue here is whether Wyo. Stat. § 31–6–102, the implied consent statute, and the suspension provided under that statute constitutes punishment for double jeopardy purposes. Glasrud's license was suspended pursuant to the implied consent statute first, then he was convicted of DWUI for violation of Laramie Municipal Ordinance § 10.24.010. Glasrud complains that Wyo. Stat. § 31–6–102, not §§ 31–7–125, –127, and –128, constitutes punishment for double jeopardy purposes. Therefore, we have limited our discussion to the administrative license suspension statutory scheme found in § 31–6–102.

cense suspensions or revocations for drunk driving as violative of the prohibition against double jeopardy. "[E]very law must be presumed to be constitutional, with all doubt resolved in its favor." *Snyder v. State*, 912 P.2d 1127, 1129 (Wyo.1996) (quoting *Luplow v. State*, 897 P.2d 463, 466 (Wyo.1995)). "[O]ne who would deny the constitutionality of a statute has a heavy burden. The alleged unconstitutionality must be clearly and exactly shown beyond any reasonable doubt." *Nickelson v. State*, 607 P.2d 904, 910 (Wyo. 1980).

## DISCUSSION

█ The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides: "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb." *United States v. Ursery*, —— U.S. ——, ——, 116 S.Ct. 2135, 2139, 135 L.Ed.2d 549 (1996). The Fifth Amendment is enforceable against the states through the Fourteenth Amendment, and the Wyoming Constitution provides the same protection, stating: "nor shall any person be twice put in jeopardy for the same offense." *Cook v. State*, 841 P.2d 1345, 1347 (Wyo.1992) (citing WYO. CONST. Art. 1, § 11; *Vigil v. State*, 563 P.2d 1344, 1350 (Wyo.1977); *Hopkinson v. State*, 664 P.2d 43, 68 (Wyo.1983), *cert. denied*, 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983)). The Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal, against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense." *Cook*, 841 P.2d at 1347 (citations omitted).

"The law of double jeopardy is 'confused, inconsistent, and less than a model of clarity.'" *Cook*, 841 P.2d at 1347 (citations omitted). The law became even less clear in the wake of three United States Supreme Court opinions: *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989); *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993); and *Dept. of Revenue of Montana v. Kurth Ranch*, 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). In light of these opinions, defendants began arguing that the Su-

preme Court had expanded double jeopardy protection. Lower court judges in at least twenty-one states accepted the double jeopardy argument in drunk driving/administrative license suspension cases. Jennifer E. Dayok, Comment, *Administrative Driver's License Suspension: A Remedial Tool That Is Not In Jeopardy*, 45 AM. U.L.REV. 1151, 1157 (1996). However, the Court attempted to set the record straight in its most recent double jeopardy opinion, *United States v. Ursery*, —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996).

Announcing that *"Halper* dealt with *in personam* civil penalties under the Double Jeopardy Clause; *Kurth Ranch* with a tax proceeding under the Double Jeopardy Clause; and *Austin* with civil forfeitures under the Excessive Fines Clause," the Court distinguished each of those cases from *in rem* civil forfeitures for purpose of the Double Jeopardy Clause. *Ursery*, —— U.S. at ——, 116 S.Ct. at 2147. The Court denied any jurisprudential shift in *Halper, Austin* and *Kurth Ranch* and limited the use of those cases to their facts. *Id.* As such, because this case involves the suspension or revocation of a driver's license and does not involve the excessive civil fines of *Halper*, the tax of *Kurth Ranch*, or a challenge under the Excessive Fines Clause like *Austin*, those cases are of little import to our analysis and we turn to Wyoming case law to analyze the certified questions presented.

█ In *Nickelson v. State*, 607 P.2d 904, 909 (Wyo.1980), we adopted a five criteria test to determine whether a penalty imposed by the State is "civil" or "criminal." Although *Nickelson* involved the right to remain silent in a proceeding in which the appellants contended the penalty was criminal in nature, the analytical framework is appropriate in this case, where we must determine whether an administrative license suspension penalty is civil/remedial, or criminal/punishment.

*Nickelson's* five criteria are:

(1) Type of offense. Is the offense one which is traditionally or by its very nature criminal? If not, it may be considered to be civil.

(2) Penalty. What is the penalty and how severe is it? This has been isolated as the most significant factor, but it is by no means conclusive. Imprisonment may not be used as punishment for a civil offense. The imposition of a fine or penalty may be entirely consistent with an offense being civil in nature. On the other hand, a fine or penalty may become so severe in the context of the circumstances in which it is imposed that the offense becomes criminal in nature and the constitutional protections associated with criminal prosecutions are necessarily called into play. An arbitrary dollar figure cannot be rigidly set as the touchstone. Rather, the amount of the fine must be weighed in view of all the circumstances relevant to the offense in question.

(3) Collateral Consequences. What other consequences are in the offing for the defendant in addition to the fine? Are there such collateral consequences and are they regulatory in nature or do they impose additional punishment?

(4) Punitive Significance. This is perhaps the most difficult factor to weigh and the element of subjectivity must be scrupulously avoided. We must inquire whether the offense is one primarily motivated by punitive intent. Is the statute plainly one that inflicts "punishment"? Does the judgment have stigmatizing or condemnatory significance?

(5) Arrest and Detention. Are the pretrial practices familiar to the criminal law utilized? If they are, that may serve to tip the balance in favor of a determination that the offense is criminal.

*Nickelson,* 607 P.2d at 909.

Glasrud contends WYO. STAT. § 31–6–102, the administrative license suspension statute, constitutes punishment for purposes of double jeopardy. WYO. STAT. § 31–6–102 provides that a person arrested for a violation of WYO. STAT. § 31–5–233, the drunk driving criminal statute, is deemed to have given consent to a chemical test or tests of his blood, breath or urine to determine blood-alcohol concentration. WYO. STAT. § 31–6–102 (Cum.Supp.1996). If a person submits to chemical testing and the test result indicates a blood alcohol concentration of 0.10% or more, the department suspends the person's driver's license or privilege to operate a motor vehicle in this state for ninety days. WYO. STAT. § 31–6–102(e) (Cum.Supp.1996).

■ Applying the five factors from *Nickelson* to this statute, we find:

■ (1) The offense is civil in nature. The purpose of the implied consent statute is to facilitate the removal of drunk drivers from our highways. *Van Order v. State,* 600 P.2d 1056, 1058 (Wyo.1979) (citing *State v. Chastain,* 594 P.2d 458, 461 (Wyo.1979), *overruled on other grounds, Olson v. State,* 698 P.2d 107 (Wyo.1985)). This indicates the remedial purpose of the statute.

(2) The penalty for a violation consists of suspension of the driver's license for six months for the first offense and eighteen months for the second or subsequent offense if the driver fails to submit to the tests; or if he submits to the tests and the results indicate a blood alcohol concentration of ten one-hundredths of one percent (0.10%) or more, the department suspends the license for ninety days, subject to the issuance of a temporary license, which is valid for thirty days. WYO. STAT. 31–6–102(a)(ii), (e), (f) (Cum.Supp.1996). Further, if a criminal conviction results from the same incident, the suspension under the criminal conviction is reduced by ninety days. WYO. STAT. § 31–6–102(e) (Cum.Supp.1996). We cannot say, based on all of the circumstances, that this penalty is so severe as to constitute punishment.

(3) We see no collateral consequences to this statute. It is designed to work hand in hand with the DWUI statute. *Chastain,* 594 P.2d at 461. It does not provide for an additional penalty, because if a criminal conviction results from the same conduct, any criminal suspension is reduced by ninety days. WYO. STAT. § 31–6–102(e) (Cum.Supp. 1996).

■ (4) Violation of the statute results in the suspension of a driver's license, removing drivers who drink and drive from our roadways for ninety days. The penalty does not carry a moral stigma or condemnatory signif-

icance with it. It is not primarily motivated by punitive intent, rather, it is "intended to impose a condition on the right to operate a motor vehicle on the streets and highways of this state." *Chastain,* 594 P.2d at 461. A driver's license is defined as a license or privilege "which grants the privilege to drive or operate a motor vehicle on the public highways, streets and roads of this state." WYO. STAT. § 31–7–102(a)(xxv) (1994). Revocation of a privilege is not ordinarily considered punishment. *State v. Zimmerman,* 539 N.W.2d 49, 52 (N.D.1995) (citing *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917, 922 (1938)).

■ (5) The proceedings are civil in nature. Driver's license suspensions are civil proceedings, separate and distinct from DWUI prosecutions. *McGuire v. Wyo. Dept. of Revenue and Taxation,* 809 P.2d 271, 274 (Wyo.1991). In holding that probable cause must only be proven by a preponderance of the evidence in a license revocation hearing, we cited 2 DONALD H. NICOLS, DRINKING/DRIVING LITIGATION: CRIMINAL AND CIVIL § 20.01, at 3 (1994), stating:

> An implied consent violation is purely administrative and separate from any traffic or criminal drinking/driving infraction even though the implied consent law and the law defining drinking/driving offenses may be contained in the same statute.

*Wyo. Dept. of Revenue and Taxation v. Hull,* 751 P.2d 351, 356 (Wyo.1988).

Therefore, we hold that the penalties provided in WYO. STAT. § 31–6–102 do not constitute punishment for purposes of double jeopardy.[2] Having answered the first certified question in the negative, we need not answer the second certified question in this case. Because the administrative license suspension does not constitute punishment, Wyoming and its municipalities may convict and sentence a person for DWUI and subject the driver to an administrative license suspension.

2. We note that our holding, that the administrative license suspension does not constitute punishment, is in accord with the vast majority of

## CONCLUSION

Wyoming's implied consent law and its administrative license suspension procedures are intended to facilitate the tests for intoxication and remove drunk drivers from our highways. As such, they properly impose a condition on the right to operate a motor vehicle on the streets and highways of our state and do not constitute punishment for purposes of double jeopardy.

courts which have ruled on the issue. *See Deutschendorf v. People,* 920 P.2d 53, 61 n. 4 (Colo. 1996).