Anthony M. NESIUS,
Appellant (Petitioner),

v.

STATE of Wyoming DEPARTMENT OF
REVENUE AND TAXATION, MOTOR
VEHICLE DIVISION, Appellee (Respondent).

No. 89–188.

Supreme Court of Wyoming.

March 15, 1990.

Robert T. Moxley of Whitehead, Gage &
Davidson, P.C., Cheyenne, for appellant.

Joseph B. Meyer, Atty. Gen., Peter J.
Mulvaney, Deputy Atty. Gen., Kristin H.
Lee, Sr. Asst. Atty. Gen., Cheyenne, for
appellee.

Before CARDINE, C.J., and THOMAS,
URBIGKIT, MACY and GOLDEN, JJ.

GOLDEN, Justice.

The appellant (Nesius) was arrested on
the evening of February 4, 1988, for driving while under the influence (DWUI). At
some point after his arrival at the jail that
evening, Nesius was asked to take a breath
test.[1] He refused to take the test and his
driver's license was suspended.[2] Nesius

---

1. Under Wyoming's "Implied Consent to Chemical Testing," W.S. 31–6–101 through 31–6–106, an individual arrested for DWUI "who drives or is in actual physical control of a motor vehicle * * * is deemed to have given consent, subject to the provisions of this act, to a chemical test or tests of his blood, breath or urine for the purpose of determining the alcohol or controlled substance content of his blood." W.S. 31–6–102(a)(i).

2. W.S. 31–6–102(d) states that:

received a hearing to contest the suspension;[3] the hearing examiner sustained the suspension.[4] The district court granted Nesius's petition of review,[5] and on June 26, 1989, it issued an order affirming the suspension.

On appeal, Nesius seeks reversal of the hearing examiner's suspension of his driver's license.

Nesius contends that:

I. The jurisdictional sworn statement was not presented according to the statute.

A. The signed statement must contain the information mandated by statute.

B. The suspension order is reversible under the administrative procedure act as having been obtained without observance of procedure required by law.

II. The refusal to take a chemical test is excused by failure to give adequate advisement of the law.

A. The refusal to submit, to be the basis for suspension, must be voluntary and knowing.

B. The appellant's unadvised refusal was not voluntary.

The state asks whether:

I. The arresting officer's signed statement and attached arrest report were properly submitted pursuant to law?

II. [Appellant] was properly advised of the Wyoming implied consent law?

We find sufficient evidence to support the hearing examiner's decision. We affirm, but with a prospective modification of "Wyoming Implied Consent Advisement" to alleviate the possibility of confusion between the advisement about the chemical test and *Miranda* warnings.

### BACKGROUND

Nesius, accompanied by his attorney, testified before the hearing examiner on March 14, 1988, that he was given his *Miranda* warnings upon his arrival at the jail. Nesius alleges he made his demand to speak with an attorney after being given the *Miranda* warnings and that the "Wyoming Implied Consent Advisement" form was never read to him. Since Nesius did not subpoena the deputy, he had no opportunity to question him at the hearing.[6]

The state's evidence consisted of the officer's signed statement,[7] on which was written, "see attached report." The attached report was in narrative form and consisted of three pages. Nesius objected to the statement and the report. The hearing examiner overruled the objection and admitted the signed statement and report into evidence, apparently as a "certified record."[8]

If a person under arrest [for DWUI] refuses upon the request of a peace officer to submit to a chemical test * * * none shall be given. The peace officer shall submit his signed statement to the department [of revenue and taxation]. Upon receipt of the statement the department shall suspend the person's Wyoming driver's license * * * for six (6) months subject to review as provided in this act.

3. W.S. 31–6–103(a) provides for a hearing before a hearing examiner, if the request is timely. It also stays the suspension.

4. "At the conclusion of the hearing, the hearing examiner shall order that the suspension either be rescinded or sustained." W.S. 31–6–103(b).

5. W.S. 31–6–104(a) provides for district court review of the hearing examiner's suspension of a driver's license.

6. The arresting officer, unless subpoenaed, is not required to appear at the hearing. *Department of Revenue and Taxation v. Hull,* 751 P.2d 351, 355 (Wyo.1988).

7. W.S. 31–6–102(d) provides that "The [signed] statement submitted by the officer shall contain:
   (i) His probable cause to believe the arrested person was driving or in actual physical control of a motor vehicle:
      (A) On a public street or highway in this state;
      (B) While under the influence of alcohol or a controlled substance to a degree which rendered him incapable of safely driving the vehicle; and
   (ii) That the person refused to submit to a test upon the request of the peace officer."

8. The Wyoming State Tax Commission has promulgated rules found in Chapter I, § 6(e) of the "Rules of Practice and Procedure For Hearing Before The Independent Hearing Examiner."
   (e) For any hearing held in accordance with the Implied Consent Law and/or Administrative Per Se Suspension, W.S. 31–6–101 through 31–6–106, the Department of Revenue and Taxation may present evidence by direct testimony or *certified record,* whichever they

According to the attached report, the officer observed Nesius's pickup speeding, cross the center line twice, and drive onto the shoulder of the highway four times. It goes on to note that Nesius had balance problems, smelled of alcohol, and had red and watery eyes. Nesius admitted, in the report, that he had drunk two beers. The report also chronicles Nesius's poor performance in various field sobriety tests. From these observations, the officer believed he had probable cause to arrest Nesius for DWUI.

In the report the police officer additionally stated Nesius was advised that[9] 1) he was under arrest for DWUI; 2) his failure to submit to all required tests requested of his blood, breath, or urine for the purpose of determining the alcohol or controlled substance content of his blood would result in the suspension for six months of his Wyoming driver's license and his privilege to operate a motor vehicle; 3) if a test was taken and the results indicated he was under the influence of alcohol, he may be subject to criminal penalties and his Wyoming driver's license and his privileges to operate a motor vehicle would be suspended for ninety days; and 4) he may be taken to the nearest hospital or clinic and secure any or all required tests at his own expense or he could have the tests administered by a person at a place and in a manner prescribed by and at the expense of the officer's agency. The officer stated that the above warning was given while Nesius was in the jail.

The report also states that Nesius refused to take the breath test. When Nesius was asked if he intended to have the test administered at his own expense, he indicated that he wanted to see an attorney before consenting to the test. Nesius was then issued a "Notice of Suspension and Temporary Wyoming Driver's License."[10]

The hearing officer issued his "Implied Consent Order of Suspension" on March 18, 1988. The hearing officer ruled that the state, through the certified record, had established by a preponderance of the evidence each of the four elements necessary to uphold the suspension.[11] The hearing officer found, inter alia, that Nesius "was advised of the requirement to submit to all requested tests and the consequences of taking or refusing to take a test."

DISCUSSION

■ Nesius's first argument focuses on the officer's use of the attached report, instead of the signed statement, to document the arrest. Nesius argues that the language of W.S. 31–6–102(d) is mandatory; all of the statutory elements must be

so desire. The *certified record* shall be made a part of the record of the proceedings before the Hearing Examiner and shall consist of:
(i) The peace officer's signed statement of probable cause;
(ii) The notice of suspension and opportunity for hearing;
(iii) A copy of the *temporary license, if issued;*
(iv) The operational check list or chemical test result provided * * *; and
(v) All other evidence which is material to the matter being reviewed. (emphasis added)
We have upheld the state's use of the "certified record" at suspension hearings. See *Drake v. State ex. rel. Department of Revenue and Taxation,* 751 P.2d 1319, 1322 (Wyo.1988); and *Hooten v. State, Department of Revenue and Taxation,* 751 P.2d 1323, 1325 (Wyo.1988).

9. Before the chemical tests can be administered, the arresting officer is required to read to the individual the "Wyoming Implied Consent Advisement" (the language mirrors W.S. 31–6–102(a)(ii)(A) through (C)). *State v. Chastain,* 594 P.2d 458, 462 (Wyo.1979).

10. See W.S. 31–6–102(f).

11. Under W.S. 31–6–103(b), the scope of the hearing is limited to the following four issues, which the hearing examiner decides:
[W]hether a peace officer had probable cause to believe the arrested person had been driving or was in actual physical control of a motor vehicle upon a public street or highway in this state while under the influence of alcohol or a controlled substance to a degree which rendered him incapable of safely driving the vehicle, whether the person was placed under arrest, whether he refused to submit to a test upon request of the peace officer * * * and whether * * * he had been advised that his Wyoming driver's license or privilege to operate a motor vehicle shall be suspended for six (6) months if he refused to submit to a test and suspended for ninety (90) days and subject him to criminal penalties if he submitted to the test and the results indicate the person is under the influence of alcohol.

found on the signed statement.[12] The reason for this requirement, according to Nesius, is that the signed statement is deemed a sworn statement, and subject to the penalties for perjury.[13] Nesius claims that because the signed statement contains none of the required elements (all of the necessary elements are, instead, found on the attached "unsworn" report), the state's certified record violates the statute.

The force of Nesius's argument is undercut, however, because he acknowledges that the signed statement could incorporate the attached report, notwithstanding the "mandatory" statutory language. He claims the officer failed to explicitly incorporate the report; therefore, we should find the certified record deficient and set aside the suspension. Our implied consent statutes are silent on incorporation of the officer's investigative report into his signed statement. We believe the proper resolution of this issue focuses not on whether the attached report was properly incorporated, but on whether the attached report was accurate. The means to make that inquiry are already in place.

Through discovery, the officer's signed statement and any accompanying documentation submitted by the arresting officer [14] are accessible before the hearing. The individual with his attorney [15] may challenge the suspension both before a hearing examiner and the district court. The power to subpoena the officer to question his preparation of the report is also available. Finally, the signed statement submitted by the peace officer shall be deemed a sworn statement and shall be subject to penalties for perjury. This provision subjects police officers to charges of perjury for attaching false reports to their signed statements.

Nesius's attorney reviewed the attached report. He did not directly challenge the report's accuracy; instead, he argued of the potential "danger" in police attaching

"unsworn" reports to their signed statements. If Nesius truly believed that the officer attached a false or inaccurate report to the signed statement, he should have subpoenaed the officer to testify at the hearing. Justice Urbigkit has correctly noted: "[i]t will be the driver and not the State that will bear the responsibility of challenging the validity of the implied-consent suspension action through subpoenaing the officer to testify when the decision is made to challenge the veracity or validity of the filed form." *Hull*, 751 P.2d at 356.

The hearing examiner complied with the statute.[16] We believe the necessary tools are available to individuals to challenge suspect reports; therefore, we decline the invitation to add an unnecessary layer to the law by requiring a determination of whether the report was properly incorporated. The attached report established: the officer had probable cause to believe Nesius was driving on the public streets while under the influence of alcohol; Nesius was arrested for DWUI; Nesius was properly informed of his rights vis-a-vis submitting to a chemical test; and Nesius refused to take a test.

Nesius also argues that the Administrative Procedures Act provides independent grounds to reverse the suspension because the signed statement was not filled out according to the statutes. For the reasons set forth above, we hold that the signed statement does comport with the statutes.

■ Nesius's second argument states that "the refusal to take a chemical test is excused by failure to give adequate advisement of the law." Nesius claims that he understood the *Miranda* warning to mean that he had the right to consult with an attorney before taking the chemical tests. He suggests that if the officer would have informed him that he had no right to an

---

**12.** *See supra* footnote 7.

**13.** W.S. 31–6–102(g): "For the purposes of this section, the signed statement submitted by the peace officer shall be deemed a sworn statement and shall be subject to penalties for perjury."

**14.** W.S. 31–6–103(c).

**15.** The tax commission rules provide for an attorney in Chapter I, at § 6(b) of the "Rules of Practice and Procedure For Hearing Before The Independent Hearing Examiner."

**16.** *See supra* footnote 11.

attorney before deciding whether to take the tests, his decision might have been different. Nesius argues that "the only way to ensure fairness is to make a rule that the officer must further explain that the right to counsel does not apply to implied consent decisions."

Wyoming's implied consent law, W.S. 31–6–102(a)(i), provides, in pertinent part: "The test or tests shall be: (A) Incidental to a lawful arrest; (B) Given as promptly as possible after the arrest." In other words, the individual is arrested, and may or may not be given the *Miranda* warning, then read the consent form and asked to submit to a "chemical test or tests of his blood, breath, or urine for the purpose of determining the alcohol or controlled substance content of his blood." Id. "Wyoming'[s] Implied Consent Advisement" does not alert the individual that the right to an attorney, expressed in the *Miranda* warning, only applies in the context of an arrest for DWUI, and not to the question of implied consent.

The Utah Supreme Court noted the importance of the distinction between *Miranda* and implied consent:

> [W]hen a driver suspected of driving under the influence is arrested, he is at that point involved in a criminal proceeding and must be given the *Miranda* warning * * *. Almost contemporaneous with the giving of the *Miranda* warning a request to take a test pursuant to the Implied Consent Statute may be made and the driver informed that he has no right to consult an attorney prior to taking the test. These two propositions are not inconsistent with each other; but it is important that each proposition be stated fully, clearly and understandably so that the driver understands that his affirmative duty to take a blood test is not obviated by the *Miranda* warning.

*Holman v. Cox,* 598 P.2d 1331, 1333 (Utah 1979).

In Arizona, the following implied consent form is read to the individual:

> 1. Those [*Miranda*] rights of which you have just been advised, that is the right to remain silent or to speak with an attorney, have an attorney present during questioning, or to have one appointed for you, do not apply to this request.
> 2. If you remain silent, your silence will be considered a refusal to take the test. Likewise, you are advised that regardless of what an attorney may advise you regarding submission to this test, if you refuse to take the test, your right to drive will still be suspended * * *.

*Gaunt v. Motor Vehicle Division, Department of Transportation,* 136 Ariz. 424, 666 P.2d 524, 525 (1983).

Similarly, individuals arrested for DWUI in Colorado are told that "proceedings under the implied consent law are civil in nature, not criminal, [and] as a matter of law you have no right to consult with an attorney before deciding to submit to, or refuse, a chemical test of your blood, breath, or urine." *Drake v. Colorado Department of Revenue, Motor Vehicle Division,* 674 P.2d 359, 361 n. 5 (Colo.1984).

We believe that Arizona, Colorado, and Utah's implied consent forms reflect a pragmatic view of the possible confusion between *Miranda* and implied consent. We do not foresee any burden in ruling, prospectively, that police officers add a brief statement in the "Wyoming Implied Consent Advisement" which includes some combination of the above information.

■ We continue to adhere to our previous ruling:

> [I]f the arrested person is reasonably informed of his rights, duties and obligations under our implied consent law and he is neither tricked nor misled into thinking he has no right to refuse the test to determine the alcohol content in his blood, urine or breath, the test will generally be held admissible.

*Olson v. State,* 698 P.2d 107, 113 (Wyo. 1985).

Our ruling, today, is simply this: In an attempt to prevent future claims of "confusion," police officers, whether or not they give a *Miranda* warning to the individual, should include a brief statement that the

individual has no right to an attorney before deciding whether to take the chemical test.

Affirmed.

URBIGKIT, Justice, dissenting, with whom MACY, Justice, joins.

The pervasive issue of this appeal, while serving shortcuts and convenience, is how much should we dilute procedural and substantive guarantees provided to protect basic constitutional interests. This court, by majority decision, authenticates some kind of business record hearsay arrangement to create useable administrative agency documentation in substitute for the minimum standard of a statutorily required signed statement. I do not, and consequently dissent.

The legislature, with the subsequent concurrence of this court, has gone a long way to approve "efficient" arrangements as a substitute for real first-party evidence in driver's license suspension hearings. *Hooten v. State, Dept. of Revenue & Taxation*, 751 P.2d 1323, 1325 (Wyo.1988); *Drake v. State ex rel. Dept. of Revenue & Taxation*, 751 P.2d 1319, 1322 (Wyo.1988). The approved arrangement included a signed report of the individually involved arresting officer and an opportunity for the defendant driver to subpoena the officer for adverse party testimony at the suspension hearing.

This case extends that arrangement by authenticating the execution of a "blank" form as a statement and then arranging for someone, sometime, somehow to attach the office investigative record without initialling or explicit identification for adoption of the attachment by the arresting officer.[1]

The test, I submit, is whether the author of the "report" can be prosecuted for perjury if the information is false or, conversely, whether he can defend any inaccuracies by statements that he was not responsible for what was said on the form which someone else attached to the document which he had signed. As those of us who have labored in the documentary world of private practice come frequently to know only too well, there is a simple solution. The arresting officer should either include the information on the face of the signed form or, if provided by attachment, then sign the attachment as explicit approval and certification of the factual statements.

At issue in this case is a controversy about what occurred prior to and at arrest. The documentation submitted by the state motor vehicle division is a computer print out from the office of the sheriff which, as an internal record, would certainly not, in itself, be admissible in a civil trial or for prosecutorial evidence in a criminal proceeding. This record does not demonstrate when Deputy Heller signed the FSFR–5 form, *that he ever read* the "standard trailer," or, in fact, that it actually existed *at that time*. If the FSFR–5 form was attached to the standard trailer as it is stated, it had to be signed before the office record narrative document was completed.[2] What we do know is that the hearsay document—standard trailer—was typed four days after arrest and *approved two days before it was typed.*

It may seem insignificant to this court, but not to me, that the critical document in this proceeding has no independent evidentiary validity. We do not know what information may be subject to challenge, what supplementation occurs in the dictation and typing process, and whether the arresting officer is willing to swear to every typed statement found on the form under penalty of perjury. We have converted what was a first-party hearsay process for a driver's license hearing into a second or double hearsay substitute. A public record hearsay exception cannot properly be extended

---

1. The forms, as appearing in the record, are attached to this dissent as appendices to identify the specific subject of this appeal.

2. The hearing testimony consisted of the State's usage of the double hearsay office record and the incomplete FSFR–5 signed form which provided no information. The evidentiary dispute was created by the sworn testimony of the arrested driver which directly contested information found on the form. What we have is a decision based on acceptance of double hearsay instead of the present testimony of a live witness who is available and subject to cross-examination.

to this double hearsay opinion and conclusion content. *Cf. State v. Monson*, 113 Wash.2d 833, 784 P.2d 485 (1989).

All that would be needed is for the arresting officer to read, approve and specifically sign any "attachments" so that the required certification adopts the office record as his statement and asserts that the information contained is true and correct. I will not accept an undated form as real evidence or something that is sufficient to provide due process. An incomplete certification sheet which does not contain any actual information and a computer office record form prepared four days after the date of arrest by another person does not comply with W.S. 31–6–102(d) or even the Rules of the Wyoming State Tax Commission, ch. 1, § 6(e). It certainly provides neither reliability nor due process. *Matter of GP*, 679 P.2d 976 (Wyo.1984); *Jennings v. C.M. & W. Drilling Co.*, 77 Wyo. 69, 307 P.2d 122 (1957); *Cooley v. Frank*, 68 Wyo. 436, 235 P.2d 446 (1951); *Brown v. Citizens' Nat. Bank of Cheyenne*, 38 Wyo. 469, 269 P. 40 (1928).

The especially troubling aspect of this decision is this court's conclusion that the burden rests on the individual driver to challenge what is clearly an unsigned and unattested document. There is absolutely nothing wrong with requiring proper execution in accordance with the statutes so that the certification applies to the information upon which hearing relevancy and decision is to be vested. Basic rights are involved, *see Com. v. Smith*, 568 A.2d 600 (Pa.1989); protection by minimal requirements should not be ignored. *Sanchez v. State*, 567 P.2d 270 (Wyo.1977).

I would reverse and require either the presence of the officer for the hearing or documentary evidence which is, in fact, certified to be true and complete as constituting not more than first-party hearsay.

APPENDICES

*88000584* (OK)
*31-88-12* (BB)

STATE OF WYOMING )
                 ) ss.
COUNTY OF *Laramie*    )

Agency *LCSO*
Citation No. *15960C*

**OFFICER'S SIGNED STATEMENT**

I, *Deputy Heuer* _____, a peace officer in the State of Wyoming do hereby

certify That on *Thursday, 4 February, 1788* _____, I had probable cause to believe

*Arthur Mark Nesius    102972-288    9-5-55    520685212*
(name)                 (drivers license #)      (DOB)    (SSN if available)

*3400 S6A #46*          *Cheyenne*              *WY*     *82007*
(present address)        (city)                 (state)  (zip)

hereinafter called Driver, had been driving or was in actual physical control of a motor vehicle upon a public street or highway while under the influence of alcohol or a controlled substance to a degree which rendered him incapable of safely driving such vehicle, for the following reasons:

INITIAL CONTACT;

DRIVER'S PHYSICAL CHARACTERISTICS; (Describe)
  Odor of Alcohol _____
  Speech _____
  Balance _____
  Signs or Complaints of Injury _____

PRE-ARREST STATEMENTS;

FIELD SOBRIETY TESTS; (Describe test, and driver's performance.)

  1.

  2.

  3.

*See Attached Report*

DID DRIVER TAKE MORE THAN ONE (1) CHEMICAL TEST? _____
If yes, why?

ADDITIONAL INFORMATION;

That the Driver was arrested for an offense as defined by Wyoming Statute 31-6-233.
That the driver was advised that his failure to submit to all required chemical tests requested of his blood, breath or urine for the purpose of determining the alcohol or controlled substance content of his blood shall result in the suspension for six (6) months of his Wyoming Driver's license and his privilege to operate a motor vehicle.
That the driver was advised if a test is taken and the results indicate he is under the influence of alcohol, he may be subject to criminal penalties and his Wyoming drivers license and his privilege to operate a motor vehicle shall be suspended for ninety (90) days.
That the driver was advised he may be taken to the nearest hospital or clinic and secure any or all required tests at his own expense or he could have the tests administered by a person at a place and in a manner prescribed by and at the expense of the agency employing me.

(Check box indicating applicable paragraph below)
[✓] The driver was requested to submit to the chemical tests prescribed by my agency or secure the tests at his own expense but he refused to do either.
[ ] That the Driver did submit to the requested tests and the result indicated he was under the influence of alcohol by a blood alcohol content of _____ %.

I, *Deputy Heuer* _____, Badge # *2* _____ am a duly authorized and sworn Peace Officer in the State of Wyoming. I hereby certify that this statement was prepared following the arrest of the named driver and during the normal course of my employment as a Peace Officer. I further certify that the information it contains is true and correct.

_____
Peace Officer's Signature

Mail White, Yellow and Pink copies to:   The Dept. of Revenue & Taxation
                                         Implied Consent
                                         122 West 25th Street
                                         Herschler Building
                                         Cheyenne, Wyoming 82002-0110

FSFR-5 (4/86)   Goldenrod Copy is Officer's Copy

LARAMIE COUNTY SHERIFF
P.O. BOX 787, CHEYENNE, WY 82003

Reported Date: 02/04/88 Time:        Case: 88-000384
Code: 210401 TR    Crime: DUI N/ACC HWY      Class: 210401
Occurrence Date: 02/04/88      Day: THURSDAY      Time: 23:14
Location: S. GREELEY HY. /MURRAY RD. , LC      RD: D133

================== SUSPECTS/ARRESTS ======================================

ARRESTED-1:    NESIUS ANTHONY MARK        DOB: 09/05/55   Race: W   Sex: M
    BOX 11                          Phone:    422-3579
    CHUGWATER,WY 82210     Hair: BRN   Eye: BRN   Hgt: 604   Wgt: 220   Adu/Juv: A
Business Name: UNEMPLOYED FARMER     Occupation:
                                  Phone:

    Driver License:                 Social Security: 520685712
    CII:          FBI:            Booking Number: 000018812

================== SUSPECT VEHICLES =======================================

ARRESTED-1:    License: 8C1754     State: WY   Type: T   Expires:
   Year: 79   Make: GMC      Model:             Style: PK        Color: WHI/WHI
   Identifiers:
   Vin:                   Disposition: SUSPECT

================== NARRATIVE ==============================================

FOR RECORDS DIVISION PURPOSES ONLY:   ATTACHMENTS/CANNOT PRINT/FULL REPORT

Case #88000384            NARRATIVE REPORT             000485
Reporting Deputy Heller                     (S) Nesius, Anthony Mark

ORIGIN:

I, Deputy Heller, was on patrol about 2314 hours, 02-04-88, when I observed a vehicle being operated in a careless and unsafe manner. I later identified the driver of the vehicle as Anthony Nesius.

DRIVING OBSERVATIONS:

The vehicle, a white GMC pickup was southbound on South Greeley Highway (SGH) at about the intersection with Jefferson when I first saw it. The suspect vehicle was traveling about 50 mph in a posted 40 mph zone and ran off the road onto the shoulder as it passed by the intersection with Jefferson. I had been northbound on South Greeley Highway, so I turned around and followed the suspect vehicle. From the intersection with Allison to the intersection with College Drive, the vehicle continuously weaved, crossing the line dividing the lanes twice and running off the road onto the shoulder three times. The suspect vehicle continued at about 50 mph in a posted 40 mph zone. I activated my emergency lights about the intersection with South Greeley Highway and College and the vehicle pulled over and stopped about the intersection of South Greeley Highway and Murray Road.

=================================================================
      S t a n d a r d    T r a i l e r   -   F i r s t    P a g e
=================================================================
Reporting Officer: HELLER, JOHN    Number: C00025   Date: 02/04/88   Time:
     Typed by: PIERSON          Number: K9      Date: 02/08/88   Time: 13:07
Approving Officer: Branigan, Pat   Number: S-5     Date: 09/06/88   Time:

Reported Date: 02/04/88  Time:  Case: 88-000384
Code: 210401 TR  Crime: DUI N/ACC HWY  Class: 210401

INITIAL OBSERVATIONS, ANTHONY NESIUS:

Nesius stepped out of the vehicle as I was getting out of my patrol vehicle. He had obvious balance problems, using the truck door for support as he got out and stood, and then using the truck side for support as he walked back. Nesius smelled of an alcoholic beverage and his eyes were red and watery.

INTERVIEW, NESIUS ANTHONY:

Nesius initially said that there were no mechanical problems with his truck which would cause weaving, but later in the interview claimed that the truck needed front end work. Nesius denied any problems with his eyes or vision and denied contact lenses or glasses. Nesius said he was not on any medication and had no injuries to his legs or back which would cause balance problems. Nesius was garrulous. When asked if he had been drinking, Nesius admitted to "two beers."

FIELD SOBRIETY MANEUVERS:

1.  Horizontal Gaze Nystagmus:

    A.  Right eye:  Nesius had jerky tracking, nystagmus onset prior to 45 degrees, and distinct nystagmus at maximum deviation. He turned his head to follow the object even though told to keep his head still.
    B.  Left eye:  Nesius had jerky tracking, nystagmus onset prior to 45 degrees, and distinct nystagmus at maximum deviation. He also turned his head to follow the object even though instructed to keep his head still.

2.  One Leg Stand:

The one leg stand was instructed and demonstrated, but Nesius insisted on doing the "Walking a straight line instead." Nesius was having severe problems listening to, comprehending, and dealing with instructions. He had problems concentrating and was easily distracted.

3.  Walking a straight line:

Nesius could not assume the initial position of heel to toe and did not keep his balance during instructions. He did not walk heel to toe, stay on the line, or count out loud either direction. He walked 11 steps forward and 11 steps back even though instructed to walk 9 each way.

ARREST:

Based on my observations of his driving, the physical signs of intoxication I observed during my interview, and the results of the Field Sobriety Maneuvers, I had probable cause to believe that Nesius had been operating a vehicle while under the influence of an intoxicating substance to such an extent as to preclude safe operation. Furthermore, the results of the Field Sobriety Maneuvers indicated his level of intoxication to be in excess of the presumptive level. With this probable cause, I arrested Nesius for DWUI in

==================================================================
          S t a n d a r d   T r a i l e r   -   C o n t i n u a t i o n
==================================================================
Reporting Officer: HELLER, JOHN    Number: C00025    Date: 02/04/88    Time:
          Typed by: PIERSON        Number: K9        Date: 02/08/88    Time: 13:07
Approving Officer: _____           Number:           Date:            Time:

Laramie County Sheriff's Continuation Page

Reported Date: 02/04/88 Time: Case: 88-000384
Code: 210401 TR Crime: DUI N/ACC HWY Class: 210401
violation of W.S. 31-5-233.

DISPOSITION OF VEHICLE:

Nesius did not want the vehicle towed. Deputy DeWald secured the vehicle and the keys were transported to the Detention Facility with Nesius.

PASSENGERS IN THE VEHICLE:

Nesius was alone in the vehicle.

IMPLIED CONSENT:

I read Nesius the Implied Consent statement at the Detention Facility. Nesius refused a breath test at department expense. When asked about additional tests at his own expense, Nesius demanded a lawyer before he would not agree until he talked to his lawyer. Nesius refused chemical testing.

CITATIONS:

Nesius was issued citation 15960C for DWUI, 31-5-233. Court was set for Monday, 22 February 88 at 3:00 p.m. in Laramie County Court in front of Judge Mockler.

WITNESSES:

Deputy DeWald - Field Sobriety Maneuvers, Implied Consent
Deputy Mills - Booking
Deputy Walduck - Booking

RECOMMENDATIONS:

Case closed by arrest. Disposition sheet attached.

ATTACHMENTS:

1. FSFR-5, Officer's signed statement.
2. FSFR-6, Refusal (Nesius refused to sign)
3. Intoximeter 3000 checklist
4. Teletypes for registration and license information
5. Case Disposition sheet
6. Wy Drivers license 102972-298

==============================================================
Standard Trailer - Continuation
==============================================================
Reporting Officer: HELLER, JOHN   Number: C00025   Date: 02/04/88   Time:
         Typed by: PIERSON        Number: K9       Date: 02/08/88   Time: 13:07
Approving Officer:                Number:          Date:            Time: