153 P.3d 264 (2007)
2007 WY 38
Jesus Cervantes ESCARCEGA, Appellant (Petitioner),
v.
STATE of Wyoming, ex rel., WYOMING DEPARTMENT OF TRANSPORTATION, Appellee (Respondent).
No. 06-58.
Supreme Court of Wyoming.
March 8, 2007.
*266 Representing Appellant: R. Michael Vang of Brown & Hiser LLC, Laramie, Wyoming.
Representing Appellee: Patrick J. Crank, Attorney General; Robin Sessions Cooley, Deputy Attorney General; Douglas Moench, Senior Attorney General; and Dana J. Lent, Assistant Attorney General.
Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.
VOIGT, Chief Justice.
[¶ 1] Appellant Jesus Cervantes Escarcega's driver's license was suspended for six months under Wyo. Stat. Ann. § 31-6-107 (LexisNexis 2005) and Appellant was disqualified from operating a commercial vehicle for one year pursuant to Wyo. Stat. Ann. § 31-7-305 (LexisNexis 2005 & Supp.2006) because he refused to submit to chemical testing after being arrested for driving while under the influence of alcohol (DWUI) while operating a non-commercial vehicle. The arresting officer informed Appellant that his motor vehicle operating privileges would be suspended if he refused to submit to chemical testing, but did not inform Appellant that his commercial driver's license (CDL) would be suspended for one year. The Office of Administrative Hearings (OAH) and, subsequently, the district court, upheld the suspension of Appellant's license and his commercial vehicle disqualification. We affirm.

ISSUE
[¶ 2] Did the OAH and district court err in upholding a CDL disqualification for refusal to submit to chemical testing in the course of an arrest for DWUI where the holder of the CDL was arrested while driving a non-commercial motor vehicle, and where the arresting officer recited the statutory implied-consent warning mandated for use during the stop of a non-commercial vehicle, but where the officer did not recite the statutory implied-consent warning for use during the stop of a commercial vehicle?

FACTS
[¶ 3] On June 16, 2004, the Wyoming Department of Transportation (WYDOT) sent all CDL holders a letter notifying them of changes to Wyoming's laws affecting commercial drivers, including the fact that refusal to submit to a chemical alcohol level test would result in a one year CDL disqualification under the new laws.
[¶ 4] At 4:40 a.m. on April 16, 2005, Officer Reynolds of the Rawlins Police Department stopped Appellant for speeding. Appellant was driving a non-commercial vehicle. Appellant exhibited signs of alcohol consumption and possible intoxication and the officer asked whether Appellant had been drinking. Appellant admitted to having consumed seven beers earlier in the evening and agreed to perform field sobriety maneuvers. Appellant failed adequately to perform those field sobriety tests. Officer Reynolds administered a portable breath test, which indicated a presumptive blood alcohol level of 0.20 percent. The officer placed Appellant under arrest for DWUI. Officer Reynolds then asked Appellant to submit to further chemical testing but Appellant declined to submit to those tests. The officer informed Appellant, in accordance with the requirements of Wyoming's implied consent law, Wyo. Stat. Ann. § 31-6-102 (LexisNexis 2005), that refusal to submit to chemical testing would result in loss of his privilege to operate a motor vehicle for six months. The officer did not inform Appellant of any consequences specifically related to Appellant's CDL. Appellant refused to submit to further chemical testing even after Officer Reynolds warned him a second time that his privileges to operate a motor vehicle would be suspended for six months if he refused to comply with the request.
*267 [¶ 5] WYDOT issued notices of intent to suspend Appellant's driver's license for six months and to disqualify his CDL for one year.[1] Appellant requested a contested case hearing and filed written argument with the OAH requesting relief from suspension of his license and from disqualification of his CDL because the officer failed to warn him of the prospect of the disqualification when he requested that Appellant submit to chemical testing.[2] The OAH upheld the suspension of Appellant's driver's license and the disqualification of his CDL. Appellant requested judicial review of the OAH decision. The district court issued a Decision Letter and an Order upholding both the six-month suspension of Appellant's driver's license and the year-long disqualification of his CDL. This appeal followed.

STANDARD OF REVIEW
[¶ 6] This Court reviews the final judgment of a district court regarding action taken by an administrative agency under Wyo. Stat. Ann. § 16-3-115 (LexisNexis 2005). We structure our review as though the appeal were directly from the agency, giving no special deference to the findings of the district court, and we apply the same standard of review used by district courts under Wyo. Stat. Ann. § 16-3-114 (LexisNexis 2005). Atchison v. Career Serv. Council, 664 P.2d 18, 20 (Wyo.1983). Section 16-3-114 states, in relevant part:
(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
. . . .
(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
(B) Contrary to constitutional right, power, privilege or immunity;
(C) In excess of statutory jurisdiction, authority, or limitations or lacking statutory right;
(D) Without observance of procedure required by law; or
(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.
[¶ 7] Appellant raises no issues of fact or evidentiary weight in this appeal. The only issue presented here is that of interpretation of Wyoming's implied consent law. We review questions of statutory interpretation de novo. Perry v. State ex rel. Wyo. Workers' Safety & Comp. Div., 2006 WY 61, ¶ 10, 134 P.3d 1242, 1245 (Wyo.2006). We will affirm an agency's decision if it is made in accordance with the law. Buehner Block Co. v. Wyo. Dep't of Revenue, 2006 WY 90, ¶ 11, 139 P.3d 1150, 1153 (Wyo.2006).
[¶ 8] We review a statute to determine the meaning intended by the Legislature. "If the words convey a definite meaning, which involves no absurdity or contradiction with other parts of the instrument, then that meaning apparent on the face of the instrument is the one which alone we are at liberty to say was intended to be conveyed. . . ." Rasmussen v. Baker, 7 Wyo. 117, *268 50 P. 819, 821 (1897). "We construe the statute as a whole, giving effect to every word, clause, and sentence, and we construe together all parts of the statute in pari materia." Dep't of Revenue & Taxation v. Pacificorp, 872 P.2d 1163, 1166 (Wyo.1994).

DISCUSSION

Wyoming's Implied Consent Law
[¶ 9] Wyoming law provides that every driver on our roads is deemed to have consented to chemical testing in the course of an arrest for DWUI. The implied consent statute requires that an arresting officer warn the arrestee that refusal to submit to chemical tests will result in loss of driving privileges for six months. Wyo. Stat. Ann. § 31-6-102 states:
(a) If arrested for an offense as defined by W.S. 31-5-233:
(i) Any person who drives or is in actual physical control of a motor vehicle upon a public street or highway in this state is deemed to have given consent, subject to the provisions of this act, to a chemical test or tests of his blood, breath or urine for the purpose of determining the alcohol concentration or controlled substance content of his blood.
. . . .
(ii) For tests required under this act, the arrested person shall be advised that:
(A) His failure to submit to all required chemical tests requested by the peace officer shall result in the suspension of his Wyoming driver's license or his privilege to operate a motor vehicle for a period of six (6) months for a first offense or eighteen (18) months for a second or subsequent offense as provided by W.S. § 31-6-107[.]
[¶ 10] Wyo. Stat. Ann. § 31-7-307 (LexisNexis 2005) sets forth the warnings afforded to a driver stopped for DWUI in a commercial vehicle. Section 31-7-307 states:
(a) A person who drives or is in actual physical control of a commercial motor vehicle within this state is deemed to have given consent, subject to the provisions of this section to a chemical test or tests of his blood, breath or urine for the purpose of determining alcohol or controlled substance concentration in his blood.
. . . .
(c) For tests required under this section, the person shall be advised that:
(i) His failure to submit to all required chemical tests shall result in a disqualification of his commercial driver's license. The disqualification shall be from a minimum of one (1) year to life[.]
[¶ 11] That section provides a statutorily mandated warning of the penalties in Wyo. Stat. Ann. § 31-7-305, under which Appellant's CDL was disqualified. Section 31-7-305 states:
(a) Any person is disqualified from driving a commercial motor vehicle for a period of not less than one (1) year if convicted of a first violation arising from separate incidents of:
. . . .
(v) Refusal to submit to a test to determine the driver's alcohol concentration while driving or in actual physical control of a motor vehicle[.]
[¶ 12] Appellant was in "actual physical control of a motor vehicle" at the time of his arrest and was therefore entitled to the non-commercial vehicle warnings under Wyo. Stat. Ann. § 31-6-102. The parties do not contest Appellant's entitlement to the non-commercial implied consent warnings or that the arresting officer gave Appellant those warnings. Appellant, however, argues that the officer was also required to warn him of the consequences to his CDL. Appellant claims that the warning contained in Wyo. Stat. Ann. § 31-7-307 must be given before the state can disqualify a driver's CDL for one year. We find that the implied consent and commercial driver licensing statutes do not lend themselves to that interpretation.
[¶ 13] Although the implied consent and commercial license statutes interact with one another on several levels, they are separate. The implied consent statute requires that the non-commercial implied consent warning be given to all drivers of motor vehicles for tests *269 "required under this act." Wyo. Stat. Ann. § 31-6-102(a)(ii) (emphasis added). The definitional section of that statute defines "this act" as Wyo. Stat. Ann. § 31-6-101 through § 31-6-107, the implied consent statute itself. Wyo. Stat. Ann. § 31-6-101. Tests required under the act are chemical tests pursuant to an arrest for DWUI in any motor vehicle. Wyo. Stat. Ann. § 31-6-102(a).
[¶ 14] The implied consent requirements for commercial motor vehicle drivers are in a separate statute altogether, and are even more limited in their application. Those requirements apply only to tests "required under this section." Wyo. Stat. Ann. § 31-7-307(c) (emphasis added). Section 31-7-307(c) describes the implied consent warnings due "[a] person who drives or is in actual physical control of a commercial motor vehicle within this state. . . ." Wyo. Stat. Ann. § 31-7-307(a). Appellant was not driving or in control of a commercial motor vehicle when he was stopped and arrested for DWUI. He was, therefore, not entitled to the warning contained in § 31-7-307, which applies only to drivers arrested for DWUI while driving a commercial motor vehicle.
[¶ 15] The statutes are unambiguous on this point. When a statute is not ambiguous on its face, we do not resort to the rules of statutory construction. State ex rel. Wyo. Workers' Safety & Comp. Div. v. Bruhn, 951 P.2d 373, 376 (Wyo.1997). Because Wyoming law on this point is clear, we will not consider the materials related to legislative history or the various statutory and case materials from other jurisdictions[3] presented by Appellant.
[¶ 16] This Court has interpreted Wyoming's implied consent laws and the statutory warnings on several occasions. However, most of those cases involved admissibility of chemical tests administered pursuant to a DWUI arrest and not the suspension of a driver's license for refusal to submit to such a test. See State v. Chastain, 594 P.2d 458, 461 (Wyo.1979), overruled in part by Olson v. State, 698 P.2d 107 (Wyo.1985).
[¶ 17] We modified the rules for implied consent warnings slightly in Nesius v. State Dep't of Revenue & Taxation, 791 P.2d 939 (Wyo.1990) to require that drivers be informed that they had no right to an attorney before deciding whether or not to refuse chemical testing pursuant to a DWUI arrest. The extra warning was added to avoid confusing the implied consent warnings, which occur in the moments immediately preceding the request for consent to a chemical test, with the Miranda warnings, which occur during any arrest We did not find that the statute was ambiguous but instead decided, in the interest of prudence, that we would require the extra safeguard to prevent any confusion created by the two warnings coming so quickly on each other's heels during the arrest. Id. at 943. There is no such concern here.
[¶ 18] In State v. Marquez, 638 P.2d 1292 (Wyo.1982), overruled in part on other grounds by Olson v. State, 698 P.2d 107 (Wyo.1985), we considered the question of what information had to be conveyed during a DWUI request for chemical testing in order to comply with the statutory warning provisions of the implied consent statute. At the time, there was conflicting language in the statute and we resorted to the tenets of statutory construction to determine legislative intent. Id. at 1294-1295. Those conflicting statutory provisions have since been reconciled and, in any case, are not at issue here. See Wyo. Stat. Ann. § 31-6-102(a) and § 31-6-103(b) (LexisNexis 1977). The statute is unambiguous as to what warning is *270 required during the stop of a non-commercial vehicle.
[¶ 19] The Legislature has mandated specific warnings to all drivers that there are consequences to their non-commercial driver's licenses for refusing to submit to chemical testing subsequent to an arrest for DWUI. The prospect of those consequences encourages drivers to submit to chemical testing, and serves to aid the state in achieving the legitimate goals of removing drunk drivers from the road and imposing proper penalties on offenders. Mackey v. Montrym, 443 U.S. 1, 18, 99 S.Ct. 2612, 2621, 61 L.Ed.2d 321 (1979). The law also clearly requires law enforcement officers to give specific warnings to drivers arrested for DWUI in commercial vehicles that there will be consequences to their CDLs if they refuse chemical testing. That statutory warning is calculated to reach those most likely affected (someone driving a commercial vehicle legally must possess a CDL) and provides significant incentive for those individuals to submit to chemical testing. The Legislature did not choose to require the commercial vehicle warning during the stop of a non-commercial vehicle, where a comparatively small percentage of those stopped are likely to benefit from, or be affected by, such a warning.
[¶ 20] It would be impractical to require that an arresting officer convey all the information in both statutory schemes to an arrestee before requesting a specimen for chemical testing. The implied consent and various driver's license statutes contain multiple interrelated provisions for penalties that may be heightened or vary according to the circumstances of each violation. To require a detailed recitation of all statutory penalties involved in a traffic stop would be a misuse of law enforcement resources and would not serve the purpose of the implied consent statutes. The implied consent law was intended as a complement to the DWUI statute and was designed to facilitate tests for intoxication, not to inhibit the ability of the state to keep drunk drivers off the road. Chastain, 594 P.2d at 461.
[¶ 21] Implied consent is, by nature, implied in law.[4] Merely by choosing to drive a motor vehicle on the roads of this state, a driver agrees to submit to chemical testing in the event of his arrest for DWUI. The consequences for refusing a chemical test are published law, of which every citizen is presumed to have knowledge. See Cheek v. United States, 498 U.S. 192, 199, 111 S.Ct. 604, 609, 112 L.Ed.2d 617 (1991). The Legislature has created a few limited exceptions to that rule by requiring that specific warnings be given to drivers in certain situations before penalties can be imposed. Appellant here was given the precise warning required by the applicable statutes for a driver stopped in a non-commercial vehicle. He was entitled to no more and no less.

Due Process of Law
[¶ 22] Perhaps realizing the serious difficulty of arguing non-compliance with the statutory scheme where the warnings given to Appellant fulfilled the statutory requirement to the letter, Appellant attempts to raise the issue of due process in this appeal. However, "neither the district court nor this Court has the authority in an administrative agency appeal to address a petition for review regarding the constitutionality of a statute. Rather, the correct course is an independent action for declaratory judgment." Torres v. State ex. rel. Wyo. Worker's Safety & Comp. Div., 2004 WY 92, ¶ 6, 95 P.3d 794, 795 (Wyo.2004). We held in Riedel v. Anderson (In re Conflicting Lease Applications), 972 P.2d 586 (Wyo.1999) that an administrative agency lacks authority to determine the constitutionality of a statute. "This is so whether the question is the constitutionality of the statute per se or the constitutionality of the statute as applied." Id. at 587. Appellant argues that Wyoming's motor vehicle code is unconstitutional because it did not require sufficient due process before Appellant could be deprived of his CDL. The proper vehicle for such an argument is a declaratory judgment action brought under W.R.A.P. 12.12. Id. We will, therefore, not address Appellant's argument *271 on the subject, or the State's response to that argument.

CONCLUSION
[¶ 23] There is no statutory requirement that an officer read the statutory implied consent warning for the stop of a commercial vehicle to the driver of a non-commercial vehicle when requesting a specimen for chemical testing pursuant to a DWUI arrest. The OAH and the district court properly upheld the suspension of Appellant's driver license as well as the disqualification of his CDL and we affirm.
NOTES
[1] A copy of the notice of suspension of Appellant's driver's license was submitted to the OAH and is part of the record on appeal. Neither party submitted a copy of the CDL disqualification notice to this Court; however, both parties refer to that notice in their briefs, and neither party contests its existence.
[2] Appellant requested a contested case hearing without specifying whether he wished to contest the license suspension or the commercial disqualification. WYDOT's acceptance of that request only addresses the six-month implied consent suspension of Appellant's non-commercial license. The OAH addressed both issues in its decision but Appellant did not raise the issue of the suspension of his non-commercial driver's license in this appeal. We will, therefore, only consider the merits of Appellant's argument with regard to the disqualification of his CDL.
[3] Appellant cites numerous Texas and Wisconsin cases in his brief but does not provide us with the statutes those cases interpret or any argument that they are comparable to Wyoming's statutory scheme. Appellant also provides this Court with an implied consent warning from Maryland, without any citation to Maryland authority or evidence that the Maryland implied consent scheme is similar to the Wyoming statutes. Further, the Court feels compelled to note, since Appellant did not, that the Texas cases upon which Appellant relies were superseded by statutory changes to the Texas implied consent laws in 2001. The Supreme Court of Texas confirmed in Tex. Dep't of Pub. Safety v. Alford, 209 S.W.3d 101, 102 (Tex.2006), that under current law in that state, the commercial implied consent warning is only required during the stop of a commercial vehicle. Citation to Wisconsin authority is inapposite as well because the Wisconsin statutory scheme is not similar to the Wyoming implied consent and commercial driver's license laws.
[4] Black's Law Dictionary defines implied consent as "1. Consent inferred from one's conduct rather than from one's direct expression. . . ." Black's Law Dictionary 323 (8th ed.2004).