2008 WY 91

In the Matter of the Wyoming Department of Transportation Driver's License Action Involving Joseph H. HITTNER:

Joseph H. Hittner, Appellant (Petitioner),

v.

State of Wyoming, ex rel., Wyoming Department of Transportation, Appellee (Respondent).

No. S-07-0262.

Supreme Court of Wyoming.

Aug. 1, 2008.

Representing Appellant: Frank R. Chapman and Tamara K. Schroeder of Chapman Valdez, Casper, Wyoming.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General and Robin Sessions Cooley, Deputy Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶ 1]  Appellant, Joseph H. Hittner (Hittner), seeks review of an order of the district court, which affirmed orders of the Office of Administrative Hearings upholding the "implied consent" suspension of Hittner's driver's license and upholding Hittner's commercial vehicle disqualification, as imposed by the Wyoming Department of Transportation (WYDOT).  WYDOT's orders were based on the circumstance that Hittner refused to submit to required chemical testing when, on

March 22, 2006, he was arrested for driving while under the influence of alcohol as prohibited by Wyo. Stat. Ann. § 31–5–233(b) (LexisNexis 2007). Hittner argues in this appeal that the arresting officer had a duty to inform him that he had no right to consult with an attorney prior to submitting to chemical testing and the arresting officer failed to do that. In addition, he claims the hearing officer's conclusion that Hittner "refused" chemical testing is not supported by substantial evidence. We will affirm.

## ISSUES

[¶ 2] Hittner posits this statement of the issues on appeal:

I. Did the hearing examiner err in finding that the Wyoming Department of Transportation has met its burden of proof by [proving] all elements necessary to uphold an implied consent suspension pursuant to W.S. § 31–6–101 et seq. by a preponderance of the evidence?

A. The hearing examiner and the district court erred as a matter of law by concluding that the arresting officer had no duty to inform [Hittner] that he had no right to consult an attorney prior to submitting to chemical testing.

B. The hearing examiner erred by finding that [Hittner] refused chemical testing.

The State reformulates the issues this way:

Did the district court correctly affirm the hearing officer's finding that the [arresting] officer did not err in failing to inform the driver he was not entitled to an attorney?

Did the district court correctly affirm the hearing examiner's finding that [Hittner] refused the chemical test?

## FACTS AND PROCEEDINGS

[¶ 3] Hittner was observed by a sheriff's deputy driving westbound on I–80, between T–Joe's Restaurant near Archer and Cheyenne, at 7:50 p.m. on March 22, 2006. Hittner was traveling at approximately 85 miles per hour and crossed the fog line at least three times. The deputy attempted to stop him by activating her emergency lights, but Hittner failed to stop for three minutes, traveling at 80 miles per hour, changing lanes, and applying his brakes over the course of approximately two miles. For this reason, the deputy considered Hittner's conduct to constitute an attempt to elude a police officer. Hittner had an open beer container in the console of his car, and he appeared to be intoxicated. The deputy stopped Hittner at 7:53 p.m. His breath exuded a moderate odor of alcoholic beverage. His face was flushed and ruddy. His speech was slurred. His balance was described as swaying and stumbling. His attitude was sarcastic and he had no apparent handicaps. Hittner initially indicated that he was not taking any medications, but later said that he was on heavy medication for the flu and his lungs. The deputy sheriff placed Hittner under arrest at 8:12 p.m.

[¶ 4] Upon his arrest, Hittner was handcuffed for officer safety because he had attempted to elude the deputy. Standard field sobriety tests were not performed because Hittner was handcuffed and generally uncooperative and argumentative. Hittner claimed he was unable to look into the deputy's flashlight so that the horizontal gaze nystagmus test could be performed. The deputy's report indicated that the Wyoming implied consent advisement was read to Hittner at 8:13 p.m. and that he agreed to take a chemical breath test. He gave an initial sample which revealed a BAC of .14. Thereafter, Hittner "refused" to give an additional, confirmatory sample.[1] The deputy's report indicates that after several attempts, Hittner failed to blow/provide a sufficient sample, and that he was sucking on the plastic mouthpiece and not following her directions. Her report also stated that Hittner told her that

---

1. No issue is raised in this regard, but for purposes of background we note that the rules and regulations of the Wyoming Department of Health require that duplicate breath specimens must be analyzed and if those tests are not within the prescribed ranges, a third test must be given.

7 Weil's Code of Wyoming Rules, Department of Health Chemical Analysis of Blood Alcohol, Standards for Chemical Analysis of Blood Alcohol Testing, Chapter III, Procedures for Analysis, Section 1, Procedural controls, 048–055–011–3 and 011–4 (2004).

he could not blow hard enough because he was sick and on medication. Hittner smelled of alcohol and admitted to having three beers. One half-full container of beer was found on the center console of Hittner's car. He admitted to coming from the bar (T-Joe's). He also admitted to taking medications, all of which had a warning sticker "DO NOT USE WITH ALCOHOL." The medications were Cymbalta, Alprazolam, Skelaxin and Celebrex.

[¶ 5] Wyoming's implied consent laws are found at Wyo. Stat. Ann. §§ 31–6–101 through 31–6–108 (LexisNexis 2007) (some portions of those statutes were amended after the date of Hittner's offense, but none of those amendments are pertinent to this appeal). We set out a portion of § 31–6–102 because it contains the part of that act which is most directly pertinent to the issues raised in this appeal:

§ 31–6–102. **Test to determine alcoholic or controlled substance content of blood; suspension of license.**

(a) If arrested for an offense as defined by W.S. 31–5–233:

(i) Any person who drives or is in actual physical control of a motor vehicle upon a public street or highway in this state is deemed to have given consent, subject to the provisions of this act, to a chemical test or tests of his blood, breath or urine for the purpose of determining the alcohol concentration or controlled substance content of his blood. The test or tests shall be:

(A) Incidental to a lawful arrest;

(B) Given as promptly as possible after the arrest;

(C) Administered at the direction of a peace officer who has probable cause to believe the person was driving or in actual physical control of a motor vehicle upon a public street or highway in this state in violation of W.S. 31–5–233(b) or any other law prohibiting driving under the influence as defined by W.S. 31–5–233(a)(v). The peace officer who requires a test for alcohol concentration pursuant to this section may direct that the test shall be of blood, breath or urine. However, if the officer directs that the test be of the person's

blood or urine, the person may choose whether the test shall be of blood or urine. The person shall not have the option if the peace officer has probable cause to believe there is impairment by a controlled substance which is not subject to testing by a breath test in which case a blood or urine test may be required, as directed by the peace officer.

(ii) For tests required under this act, the arrested person shall be advised that:

(A) His failure to submit to all required chemical tests requested by the peace officer shall result in the suspension of his Wyoming driver's license or his privilege to operate a motor vehicle for a period of six (6) months for a first offense or eighteen (18) months for a second or subsequent offense as provided by W.S. 31–6–107;

(B) If a test is taken and the results indicate the person is under the influence of alcohol or a controlled substance, he may be subject to criminal penalties and his Wyoming driver's license or his privilege to operate a motor vehicle shall be suspended for ninety (90) days;

(C) After submitting to all required chemical tests requested by the peace officer at a place and in a manner prescribed by and at the expense of the agency employing the peace officer, the arrested person may go to the nearest hospital or clinic and secure any additional tests at his own expense;

(D) If he refuses to take all required tests, he shall not be eligible for limited driving privileges.

Also see Wyo. Stat. Ann. § 31–7–307 (LexisNexis 2007).

[¶ 6] In addition, Wyo. Stat. Ann. § 31–7–305(a)(v) (LexisNexis 2007) provides:

(a) **Any person is disqualified from driving a commercial motor vehicle for a period of not less than one (1) year if convicted of a first violation arising from separate incidents of:**

(i) Driving or in actual physical control of a motor vehicle under the influence of alcohol or a controlled substance to a

degree which renders him incapable of safely driving a motor vehicle;

(ii) Driving or in actual physical control of a commercial motor vehicle while the alcohol concentration of the person's blood, breath or other bodily substance is four one-hundredths of one percent (0.04%) or more;

(iii) Knowingly and willfully leaving the scene of an accident involving a motor vehicle driven by the person;

(iv) Using a motor vehicle in the commission of any felony;

(v) **Refusal to submit to a test to determine the driver's alcohol concentration while driving or in actual physical control of a motor vehicle;**

(vi) Driving a commercial vehicle when, as a result of prior convictions, the driver's driving privileges are cancelled, suspended or revoked, or the driver is disqualified from operating a commercial motor vehicle; or

(vii) Causing a fatality through the negligent operation of a commercial vehicle, including but not limited to homicide by motor vehicle, negligent homicide, motor vehicle manslaughter or a similar local ordinance or similar state law from another jurisdiction. [Emphasis added.]

[¶ 7] Because Hittner was deemed to have refused a chemical test as required by the implied consent statutes, he received two notices from WYDOT, under the date of March 28, 2006. One informed him that his commercial driver's license was "disqualified/cancelled." The second informed him that his driver's license was suspended. As was his right, Hittner sought an evidentiary, contested case hearing as to both matters.

[¶ 8] Hittner's hearing was held on June 21, 2006. He appeared by telephone and gave testimony.[2] WYDOT did not appear, but submitted its certified record for the hearing officer's consideration.[3] Hittner did not subpoena any witnesses, including the arresting officer whose report he wished to impeach. See *State Department of Revenue and Taxation v. Hull*, 751 P.2d 351, 352–57 (Wyo.1988) (the affected driver has the right and the obligation to subpoena such witnesses). The hearing officer upheld both of WYDOT's actions.

[¶ 9] Although these matters were separated for purposes of disposition, we will summarize the hearing officer's findings of fact and conclusions of law as though those two sets of findings comprise a single document. From the perspective of WYDOT, the hearing officer found the facts to be precisely as we have set them out above, and all of that information came from the arresting officer's report. In his testimony, Hittner claimed that he did not believe he had violated any traffic laws, and the only reason he did not immediately pull over was because he did not think his was the vehicle the deputy intended to stop. He claimed the arresting officer treated him unprofessionally and unfairly. Hittner testified that he has some hearing loss and tends to speak loudly, which the arresting officer mistook as being yelling and argumentative. He also contended that he could not properly follow the instructions for the horizontal gaze nystagmus test because he was facing the spotlight on her car. Three individuals who were with him at T–Joe's, or observed him at T–Joe's, wrote letters on Hittner's behalf indicating that they did not perceive him to be intoxicated or impaired when he left that establishment. Hittner claimed he was not told by the ar-

2. A formal transcript of the hearing was not created. The hearing was tape-recorded rather than reported. A transcript of the tape recording was created by Hittner and attached to his brief in the district court. No objection was raised about the "transcript" either in the district court or in this appeal. Indeed, the State relied on the informal transcript to support its arguments. So that no misunderstanding is created about such a transcript, we note that this method of proceeding is not authorized by the governing rules and could serve as grounds for not considering such a transcript as part of the record on appeal.

3. We have held that WYDOT may defend such cases in that manner, but we question whether it is still a prudent method, given changes in both the law and established procedures since that line of decisions was published. See *Drake v. State ex rel. Department of Revenue and Taxation*, 751 P.2d 1319, 1321–23 (Wyo.1988); and see *Nesius v. State Department of Revenue and Taxation*, 791 P.2d 939, 944–45 (Wyo.1990) (dissenting opinion).

resting officer that he did not have a right to consult with an attorney before taking the breath test, or of the consequences of refusing such a test on his commercial driver's license. Hittner submitted a report from his treating physician indicating that he was being treated for low back pain and that he was taking medication for it (the report lists Celexa, Xanax, and Celebrex). In his telephonic testimony, Hittner claimed that he was taking Baxil to treat his pneumonia. He claimed that he had great difficulty in breathing at that time and that he told the arresting officer about that problem. He claimed he blew in the testing device to the best of his ability. However, that factor was not corroborated by his medical documentation. Hittner also submitted evidence that he had entered pleas of guilty to attempting to elude (§ 31–5–225(a)), open container (§ 31–5–235), and failure to maintain single lane of travel/crossing the fog line (§ 31–5–209). The DWUI charge (§ 31–5–233(b)(ii)(A)) was dismissed without prejudice for a period of three years, and the State reserved the right to refile the charge if Hittner was convicted of a similar such charge during that three-year period. The hearing officer rejected Hittner's protestations and found the facts to be as presented in the arresting officer's report.

[¶ 10] Hittner then further appealed, filing a petition for review under W.R.A.P. 12 in the district court. The district court affirmed the hearing officer's findings of fact and conclusions of law along the same lines as the hearing officer.

### DISCUSSION

[¶ 11] The applicable standard of review is set out in detail in *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶¶ 8–27, 188 P.3d 554, 557–61 (Wyo.2008). In this case, the review standard is straight forward. We give no deference to the district court's order affirming the hearing examiner, and we peruse the record before the hearing examiner to ascertain whether there is substantial evidence to support the hearing examiner's findings of fact. We review conclusions of law *de novo*.

### Duty to Inform Hittner That He Had No Right to Consult With Attorney Before Breath Test

[¶ 12] Hittner asserts that we must reverse the district court's and the hearing examiner's orders because the arresting officer failed to inform Hittner that he had no right to consult with an attorney before taking the breath test. This contention rests on our holding in *Nesius v. State Department of Revenue and Taxation*, 791 P.2d 939, 943–44 (Wyo.1990). There, we said:

> We continue to adhere to our previous ruling:
>
> [I]f the arrested person is reasonably informed of his rights, duties and obligations under our implied consent law and, he is neither tricked nor misled into thinking he has no right to refuse the test to determine the alcohol content in his blood, urine or breath, the test will generally be held admissible.
>
> *Olson v. State*, 698 P.2d 107, 113 (Wyo. 1985).
>
> Our ruling, today, is simply this: In an attempt to prevent future claims of "confusion," police officers, whether or not they give a Miranda warning to the individual, **should**[4] include a brief statement that the individual has no right to an attorney before taking a chemical test. [Emphasis added.]

[¶ 13] Hittner claims there is nothing in the record to support a finding that the warning "required" by *Nesius* was given by the arresting officer. No issue has been raised in this case concerning *Miranda* warnings.

[¶ 14] Of central importance here, Hittner's contention is belied by his testimony at the administrative hearing. There, he stated that he was told he could not contact an attorney. Moreover, the arresting officer indicated that the implied consent advisement was read to Hittner. Thus, we are presented with a situation in which the hearing officer

---

4. Although the question is not clearly joined and, thus, we will not specifically address it here, "should" generally connotes that the directive "ought" to be done, but not necessarily that it "must" be done. See "should," Webster's Third New International Dictionary, 2104 (1986).

had to determine the credibility of the two competing witnesses, and we will not second guess that judgment under the substantial evidence standard of review.

[¶ 15]   In conclusion, we hold that there is substantial evidence in the record to sustain a conclusion that Hittner was given complete implied consent advisements and most assuredly that he was not misled in any way about what his rights were.

### Refusal of Test

[¶ 16]   Hittner claims that he did not refuse the second breath test; he was just physically unable to do the procedures required of him because of ill health.   Once again, we must employ the substantial evidence test in its purest form.   We have carefully examined the record with respect to this issue.   Hittner's argument is not preposterous by any means, but it only serves to contradict the arresting officer's view of the circumstances of Hittner's March 22, 2006 arrest for DWUI and the subsequent breath testing.   The hearing officer found that the arresting officer's evidence was more credible than that given by Hittner and we cannot, and will not, second guess that factual finding.

### CONCLUSION

[¶ 17]   The district court's order, affirming the hearing officer's orders with respect to Hittner's driver's licenses, is affirmed.